William H. KEENER, N. Scott Angevine and William D. Shannahan, John E. Hein, Don Scott and Gilbert F. Martin, Individually and as Trustees of Osage Hills Subdivision, Plaintiffs-Appellants,

v.

Ira E. BERRY, Melvin C. Karr and Chester A. Love, Individually and as Officers of Berry-Karr, Inc., a Corporation, Berry-Karr, Inc., a Corporation, Robert G. Reim, Robert Murphy, Phillip Hallof, Jr., Robert E. Staed and Francis Scheidegger, Defendants-Respondents.

No. 33407.

St. Louis Court of Appeals.

Missouri.

May 20, 1969.

Motion for Rehearing or to Transfer to the Supreme Court Denied June 13, 1969.

———◆———

Tenney, Dahman & Mathewson, St. Louis, for plaintiffs-appellants.

Chester A. Love, Edwin Rader, Edwards & Schiff, Clayton, for defendants-respondents.

DOERNER, Commissioner.

This suit to enjoin the construction of a road over Lot 117 of Osage Hills Subdivision in Kirkwood, Missouri, was brought by plaintiffs as trustees of the subdivision under a "Trust Agreement and Indenture of Restrictions" and as owners of their lots on behalf of all lot owners in the subdivision. The defendants are the corporate owner of Lot 117, which proposes to construct and use such road as a means of ingress and egress to a tract adjoining Osage Hills Subdivision; its officers and directors; and the Mayor and Councilman of Kirkwood. From an adverse judgment denying the injunction plaintiffs appealed to the Supreme Court, which ruled that it lacked jurisdiction to entertain the appeal and transferred the cause to this court. Keener, et al. v. Berry, et al., Mo., 432 S. W.2d 223.

As the controversy between the parties centers primarily on the construction of the provisions of the trust agreement a brief statement of the relevant facts will suffice. Osage Hills Subdivision was created by the filing and recording of a plat thereof in 1926. At about the same time the trust agreement applicable to said subdivision was executed and recorded. Lot 117, here involved, fronts on what in the interest of clarity we will refer to as the west side of Heatherbrook, a north-south street in the subdivision. By two transactions, the first in 1938 and the second in 1941, Paul S. May and Margaret S. May, his wife, acquired a tract of 6 acres, a part of which was contiguous with the west line of Lot 117. The May's tract is not within Osage Hills Subdivision. Mr. and Mrs. May constructed a house and a combination barn and garage on their property in 1941. As their tract was landlocked they also bought Lot 117 in that year in order to gain access to their 6 acres, and constructed a private road over the lot. They also filed of record an easement over Lot 117, which defendants introduced in evidence but which is not among the exhibits supplied to this court. No complaints regarding the use of Lot 117 for roadway purposes were made to the Mays by the trustees of the subdivision or by any other owners during the time the Mays owned the lot.

When Osage Hills Subdivision was created all of the streets were declared by the trust agreement to be private streets, under the control of the trustees, but in 1952, by authority given them in the Indenture, the trustees by a recorded deed of dedication dedicated the streets as public streets, and they were accepted as such by an ordinance adopted and recorded by the City of Kirkwood.

By a contract dated December 23, 1963 defendant Karr agreed to buy, and Mr. and Mrs. May to sell, the latter's 6 acres, as well as Lot 117, conditioned on the purchaser being able to use Lot 117 for roadway purposes. When the sale was closed title was apparently taken in the name of the defendant corporation, for it was alleged in plaintiffs' petition, and admitted in

defendants' answer, that defendant Berry-Karr, Inc., purchased Lot 117 on or about February 12, 1964. Thereafter Berry-Karr, Inc., for the purpose of creating their subdivision of the 6 acre tract, named Maybrook Subdivision, filed and recorded a plat. Defendants' evidence was that they planned to subdivide the 6 acre tract into 12 lots, including the two residences formerly occupied by Mr. and Mrs. May and their daughter, and to construct single-family houses on the 10 lots which would range from $38,000 upward in price. Defendant Berry-Karr, Inc., and its officers conceded that their only purpose in purchasing Lot 117 was to build a road over it, which they intended to dedicate to the City of Kirkwood as a public street. They also conceded that they were aware of the provisions of the trust agreement prior to their acquisition of Lot 117, and that they had not sought or obtained the permission of the trustees of Osage Hills Subdivision to use Lot 117 for the purpose intended by defendants.

■ It is beyond dispute that there is no restriction in the trust agreement to the effect that a lot in the subdivision cannot be used for a road or street. This for the reason that in Albrecht v. State Highway Commission, Mo., 363 S.W.2d 643, 645–646, in which the Supreme Court had before it the very same trust agreement here involved, that court said:

"There is no restriction in the trust agreement to the effect that the land cannot be used for a highway. In regard to the residence lots the only provision that might possibly be applicable here is the following: 'E, 4(b). That no residence or building on any residence lot shall be used directly or indirectly for business of any character or for any purpose other than that of an exclusive private residence, except that a physician or dentist residing therein may have his office and practice his profession therein.' It will be noted that the quoted restriction did not provide that the lots could not be used for any other than residential purposes as is the case in the agreements relating to many such subdivisions. It did not restrict the use of the *land,* but provided, in effect, that any *building* on the lot should not be used for any purpose other than for a private residence. The defendant does not propose to construct any building on the lots and therefore we must rule that the construction of a highway would not violate the quoted restriction."

And citing Albrecht with approval, the same result was reached in Vinyard v. St. Louis County, Mo., 399 S.W.2d 99, where similar restrictions were under consideration.

Initially, at least, plaintiffs recognize the finality of the ruling in Albrecht that the trust agreement here under consideration does not prohibit the *use* of a lot in the subdivision for street or roadway purposes. What they contend, in effect, in the first two points in their brief is that by the terms of the agreement only the trustees, or one to whom they give permission, may construct a street in the subdivision and that the chancellor should have granted an injunction since the defendants had not obtained such permission. While plaintiffs point to a number of provisions in the trust agreement in support of their contention, all of which we have carefully examined, only two are at all applicable. The first is paragraph 1 and in part 2 of Clause C, which reads:

"1. The parties of the second part and their successors, as joint tenants and not as tenants in common, shall for and during the period of the trust and of the said restrictions have the following rights, authorities, powers, interests and duties:

"2. To construct, reconstruct, maintain and repair streets, roadways, driveways, pavements, sidewalks, crosswalks, gutters and curbing, or any of them, in

and upon the aforesaid streets * * *."

The other provision is that part of Clause B which provides:

" * * * and none of the things, power to do which is hereinafter conferred upon the parties of the second part or their successors, shall be done (unless otherwise in this Indenture provided), excepting by and through the parties of the second part or their successors, or with their written permission."

■ The foregoing provisions must be read and construed in the light of the entire trust agreement. An examination of that document discloses that it consists of recitals, the granting clause, the terms of the agreement divided into clauses lettered A to J, inclusive, and the attestation. It is apparent from one of the recitals that all of the streets in Osage Hills Subdivision were established at the time the subdivision was created and the trust agreement executed, for it refers to " * * * the streets * * * delineated on said plat * * *." In fact, those streets are expressly named in the granting clause, which concludes, "And the uses and trusts under which said streets, * * * are now conveyed to the said Trustees and are to be held by them, and their powers with respect thereto, and the easements and rights of the lot owners therein, * * * are now defined as follows," following which Clauses A through J are set forth. Considered and interpreted against the background of that recital and the granting clause, it is apparent that the trustees were not given the power to construct streets in the subdivision wherever they wished. On the contrary they were empowered by paragraph 2 of Clause C to construct only the "aforesaid streets," which obviously refers to the platted streets specified in the recital and the granting clause. While recitals, as a general rule, are not strictly a part of the contract, they may be looked to in determining the proper construction of the

contract or the intention of the parties. Albrecht v. State Highway Commission, supra; 17A C.J.S. Contracts § 314, pp. 178, 179. And since the restriction in Clause B that the power conferred upon the trustees can be exercised only by them, or with their permission, refers to the trustees' limited power to construct the platted and designated streets, it follows that that clause does not require the defendants to obtain permission from the trustees to construct a street or roadway on Lot 117.

■ Plaintiffs' final point is that the court erred in failing to apply equitable principles on plaintiff's behalf in determining the rights of the parties. In their argument plaintiffs complain that, " * * * The Missouri decisions in the Albrecht case and the Vinyard case, supra, are apparently quite considerably in the minority at present, being considered as putting too narrow a construction on the restrictive covenants, and not adequately taking into account the basic purpose of such restrictions as gathered from the four corners of the document * * *." And plaintiffs quote, at length, from a Michigan decision in which, plaintiffs assert, the so-called equitable approach was employed. Whatever may be the law in Michigan, or elsewhere, both the chancellor and this court are under the constitutional duty to follow the last controlling decision of the Supreme Court of this state, Const.1945, Art. V, § 2, V.A.M.S., and neither the chancellor nor this court can be convicted of error for obeying that mandate.

For the reasons stated the judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

WOLFE, Acting P. J., BRADY, J., and JAMES H. KEET, Jr., Special Judge, concur.