**Beverley J. BUMM, Trustee, Frank Bumm, Jr., Trustee, Betty J. Gray, Charles E. Gray and Sara Lee Hamilton, Plaintiffs–Appellants,**

v.

**OLDE IVY DEVELOPMENT, LLC, Defendant–Respondent.**

No. 25734.

Missouri Court of Appeals,
Southern District,
Division Two.

July 29, 2004.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 18, 2004.

Application for Transfer Denied
Sept. 28, 2004.

Paul F. Sherman, Springfield, MO, for Appellants.

Joseph A. Bohrer, Kendall McPhail, Springfield, MO, for Respondent.

JEFFREY W. BATES, Judge.

Beverley J. Bumm and Frank Bumm, Jr., acting in their capacities as trustees for their respective revocable living trusts, Betty J. Gray, Charles E. Gray and Sara Lee Hamilton (hereinafter, collectively referred to as "Plaintiffs") filed a declaratory judgment lawsuit against Olde Ivy Development, LLC (hereinafter, "Defendant"). In Plaintiffs' lawsuit, they sought to enforce two restrictive covenants which, according to Plaintiffs, prohibited Defendant from replatting certain lots in a subdivision known as Southern Hills Unit No. 2 ("Unit 2") and dedicating a portion of those lots to the City of Springfield, Missouri, for use as a residential street. After Plaintiffs and Defendant each filed motions for summary judgment, the trial court denied Plaintiffs' motion and granted Defendant's motion. Plaintiffs appeal. We affirm.

## I. Standard of Review

The material facts presented for the trial court's consideration in the competing motions for summary judgment were undisputed, and both Plaintiffs and Defendant agree this appeal presents an issue of law for our determination. Therefore, we employ a *de novo* standard of review. *Bland v. IMCO Recycling, Inc.*, 122 S.W.3d 98, 102 (Mo.App.2003). We do not defer to the trial court's order granting

summary judgment. *Id.* Rather, our job is to decide whether, as the party moving for summary judgment, Defendant was entitled to judgment as a matter of law. Rule 74.04(c)(6); *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993) (the key to summary judgment is the undisputed right to judgment as a matter of law).[1] We review the propriety of the trial court's grant of summary judgment in Defendant's favor based on the record submitted to the trial court. *Id.* at 376.

## II. Facts and Procedural History

Plaintiffs are each owners of lots in Unit 2. The plat for Unit 2 was recorded on February 10, 1955, by Joe and Mabel Hayes, who owned the real estate at that time. The plat shows three blocks of lots labeled A, B and C. These blocks contain 13, 7 and 15 lots, respectively. The platted lots vary considerably in size and shape. Along with the plat, the Hayes also recorded nine restrictive covenants executed on January 27, 1955, that affect the platted lots (hereinafter, "the 1955 Covenants"). The 1955 Covenants relevant here are set out below.

Said Protective Covenants are provided as follows:

1. No lot or any part thereof shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars and the necessary accessory buildings well constructed.

2. No dwelling shall be permitted on any lot of which the ground floor area of the main structure, exclusive of one-story open porches and garages, shall be not less than 1000 square feet for a one-story dwelling nor less than 1500 square feet for a dwelling of more than one story.

3. No noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may become an annoyance or nuisance to the neighborhood. No business of any kind shall be operated on any lot.

4. Residential buildings, including porches or paved terraces or attached garages, shall not project closer than five (5) feet of said property lines of inside lots. Detached garages shall be located not less than seventy-five (75) feet from front property line or closer than five (5) feet from side or rear property lines, except corner lots where the restriction is that no building shall be constructed closer than fifty (50) feet from the side street of corner lots and except all lots adjoining U.S. Highways 60 and 65 wherein no restriction as to nearness to side street shall apply. Nothing contained herein shall prevent the owner of all or part of two adjoining lots from building a residential building or garage over the line dividing the owner's property. Under no circumstances are any houses to be built closer than fifty (50) feet of front property line.

5. No lot shall be subdivided into a building lot of less than ninety (90) feet frontage except Lot 13, Block "C", herein which shall have fifty (50) feet of frontage.

. . . .

8. These Protective Covenants may be amended, repealed or added to at

---

1. All references to rules are to the Missouri Rules of Civil Procedure (2004).

any time by the owners of a majority of the lots in said addition.

9. All of the foregoing Protective Covenants shall run with the land and shall be binding upon all owners, unless amended, repealed or added to in accordance with the provisions hereof, and it shall not be necessary that these Covenants be referred to in any subsequent deeds of conveyance.

Some time prior to May 2001, the James and Vera Fowler Trust ("the Fowler Trust") submitted a preliminary plat of the Olde Ivy Subdivision for review by the City of Springfield. The preliminary plat encompassed slightly more than 61 acres of land, which were platted into 107 lots. The existing use of the property was for three single family residences, a trailer park and undeveloped land. The preliminary plat included a partial replat of existing lots in Intersection Heights and lots 1, 2 and 3 in Block A (hereinafter, "Lots 1–3A") of Unit 2. Lots 1–3A were replatted as lots 68–73 and common area lots 7 and 8. A platted residential street, called "Olde Ivy Street," traversed portions of Lots 1–3A.

On May 30, 2001, the Springfield Planning and Development Department recommended approval of the preliminary plat if the developer agreed to dedicate an additional stub street to facilitate future development of Lot 107. The Planning and Zoning Commission approved the preliminary plat on June 7, 2001.

On July 23, 2001, the Springfield City Council accepted the preliminary plat by passage of Special Ordinance 24063. The ordinance stated, in pertinent part, that "City Council hereby authorizes the Director of Planning and Development on behalf of the City of Springfield, Missouri, to accept the land or easements dedicated to the City of Springfield for public use as shown on Exhibit "A," upon the subdivider filing and recording a final plat in accordance with the Subdivision Ordinance of the City. . . ."

On July 30, 2001, one of Defendant's managing partners, Michael Pulscher, attended a meeting of the lot owners of Southern Hills, Unit No. 2. Pulscher presented a proposed amendment to the original protective covenants removing from their scope Lots 1–3A. The proposed amendment stated that the owner of these lots had incorporated them within the boundaries of a preliminary plat of the Olde Ivy Subdivision. The amendment provided that the lots would only be subject to the terms and provisions of the covenants of this new subdivision and would be developed in accordance with its preliminary and final plat. The amendment did not pass.

On January 8, 2002, amended Council Bill No.2001–370 was filed. The amended bill was a resolution to approve the final plat of Olde Ivy Subdivision.

On January 10, 2002, a majority of the current owners of lots in Unit 2, but not including the Fowler Trust, signed a document called "Additional Protective Covenants Affecting Southern Hills Unit No. 2" (hereinafter, "the 2002 Covenants"). The 2002 Covenants stated:

10. No lot, nor any part of any Lot, may be "replatted" as a separate Subdivision, nor as a portion of another Subdivision. No lot, nor any part of any Lot, may be used, deeded, nor dedicated in any manner for the purpose of a public street, except for street and drainage maintenance and improvement of existing streets within Southern Hills, Unit No. 2.

11. Any new dwelling structure to be constructed on any lot, or any por-

tion of any lot, must conform to the general architectural characteristics of the existing dwellings in the Subdivision and the building plan for said dwellings must be approved by a committee elected by a vote of the owners of a majority of the lots.

On January 14, 2002, the 2002 Covenants were filed with the Greene County Recorder of Deeds at 4:44 p.m. This same day, the final plat of Olde Ivy Subdivision was accepted by the City Council in Resolution No. 8922, which was passed at the City Council meeting.

On February 5, 2002, the Fowler Trust conveyed to Defendant by trustee's deed Olde Ivy Subdivision lots 1–101 and the common areas shown in the final plat. Thus, Defendant's purchase included the real estate formerly known as Lots 1–3A of Unit 2. On February 6, 2002, the final plat of the Olde Ivy Subdivision was recorded. The final plat included a dedication of Olde Ivy Street as a public street, which was accepted by the City of Springfield pursuant to the terms of Special Ordinance 24063.

Plaintiffs' petition against Defendant was filed on April 5, 2002. The petition sought declaratory relief, injunctive relief, damages and attorney fees. Plaintiffs filed their motion for summary judgment on November 8, 2002. Defendant filed its motion for summary judgment on November 21, 2002. On June 10, 2003, the trial court denied Plaintiffs' motion and granted Defendant's motion. Summary judgment for Defendant was entered on June 12, 2003, and this appeal followed.

### III. Discussion and Decision

Plaintiffs' appeal presents one point for us to decide. Plaintiffs argue the trial court erred in failing to declare that the unambiguous language in the 1955 Cove-

nants and the 2002 Covenants precluded Defendant from using any portion of Lots 1–3A for a residential street and from replatting these three building lots into six smaller ones. Plaintiffs contend these uses contravene the restrictions contained in Covenant No. 1 of the 1955 Covenants and Covenant No. 10 of the 2002 Covenants. Because Plaintiffs are the parties seeking to enforce these two covenants, they bear the burden of proving that Defendant's use of its property violates the restrictions contained therein. *See Hammarstrom v. Samsel,* 114 S.W.3d 889, 894 (Mo.App.2003); *Daniel v. Galloway,* 861 S.W.2d 759, 761 (Mo.App.1993).

As we seek to interpret and apply these covenants to the facts of this case, we bear in mind that "[r]estrictions upon the use of real property, being in derogation of the fee, are not favored. They are strictly construed. Doubts in connection therewith are resolved in favor of the free use of the property. Restrictive covenants will not be extended by implication to include anything not clearly expressed in them." *Vinyard v. St. Louis County,* 399 S.W.2d 99, 105 (Mo.1966); *see also Albrecht v. State Highway Commission,* 363 S.W.2d 643, 645 (Mo.1962).

If the covenants upon which Plaintiffs rely are unambiguous, we must enforce them as written:

A restrictive covenant is not open to judicial construction if it is unambiguous. The intent of the parties, as expressed in the plain language of the restrictive covenant, should be given effect by the courts. Terms used in restrictive covenants should be applied in accordance with their plain, everyday or popular meaning. The language used in the entire instrument should be considered, however, and not just one clause. Such covenants are to be interpreted

narrowly, and in so doing the court must be careful not to go beyond the express stipulations.

*Daniel,* 861 S.W.2d at 761 (citations omitted). If the covenants are ambiguous, on the other hand, we attempt to determine what purpose the parties intended the covenants to serve at the time they were adopted:

> Where there is doubt as to the meaning of a restriction, it is proper to consider the parties' situation, together with accompanying circumstances, to determine the intention of the parties. This includes an inquiry into the purpose the parties sought to accomplish by the restrictive covenant. The critical time in determining what was intended by the restrictions is at the time the subdivision was platted.

*Id.* (citations omitted).

As noted above, Plaintiffs base their arguments upon Covenant No. 1 from 1955 and Covenant No. 10 from 2002. To facilitate a proper review of Plaintiffs' point relied on, we discuss these covenants separately because the potential applicability of each one presents an analytically distinct issue.

#### Covenant No. 1 from 1955

Covenant No. 1 states: "No lot or any part thereof shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars and the necessary accessory buildings well constructed." According to Plaintiffs, this covenant unambiguously prevents Defendant from using any part of Lots 1–3A to build a residential street and from replatting the lots. We agree that this covenant is unambiguous, but we do not interpret it

to prohibit the uses Defendant has made of its property.

Plaintiffs argue that building a residential street on any portion of Lots 1–3A violates this covenant because Defendant is not using the lots for residential purposes. After reviewing the relevant precedents, we disagree.

In *Vinyard v. St. Louis County,* 399 S.W.2d 99 (Mo.1966), the issue was whether the use of a portion of a lot as a driveway or roadway violated a subdivision restriction. The restriction stated that " '[a]ll lots shall be known and described as residential lots. No structure shall be erected on any residential building lot other than one detached single family dwelling which shall not exceed two stories in height.' " *Id.* at 105. Strictly construing these restrictions, the Missouri Supreme Court held that "there is no prohibition of the use of any lot in the subdivision as a roadway, driveway or street leading to adjacent land." *Id.* at 106. The Supreme Court concluded that these restrictions were directed at the type of structure to be erected upon the land and its permissible uses, rather than to the use of the land itself. *Id.*

The same issue was presented in *Keener v. Berry,* 442 S.W.2d 159 (Mo.App.1969). There, the Berry–Karr corporation purchased Lot 117, an existing lot within the Osage Hills Subdivision, for the purpose of using the lot as a means of ingress and egress to six landlocked acres adjoining the subdivision. Lot 117 was subject to restrictive covenants, and Berry–Karr was aware of the restrictions at the time the lot was purchased. Berry–Karr subdivided the six acres into 12 lots called the Maybrook Subdivision, and a plat of this new subdivision was recorded and filed. A new street platted on Lot 117 was dedicated to the City of Kirkwood as a public street.

*Id.* at 160–61. The trustees of the Osage Hills Subdivision sued to enjoin construction of the new street. The trial court denied the request for injunctive relief, and the trustees appealed. *Id.* at 160. The eastern district of this court affirmed the trial court's judgment for two reasons. First, the court determined that "there is no restriction in the trust agreement to the effect that a lot in the subdivision cannot be used for a road or street." *Id.* at 161. Second, the only other potentially applicable restriction states that " 'no residence or building on any residence lot shall be used directly or indirectly for business of any character or for any purpose other than that of an exclusive private residence....' " *Id.* This provision was held to restrict only the permissible use of any building constructed on the lot, not the use of the land itself. *Id.* Therefore, the use of Lot 117 to build a public street did not violate the subdivision's restrictions.

Likewise, in *City of Ste. Genevieve v. Ste. Genevieve Ready Mix, Inc.,* 765 S.W.2d 361 (Mo.App.1989), the issue was whether a restrictive covenant prohibited the use of a lot as a public street or thoroughfare. The covenant at issue restricted the lot's use "to residential purposes only" and further excluded the establishment of trailer courts, the housing of trailers thereon, and the building of low roof type residences which do not extend in height above ground level. *Id.* at 363. Citing *Vinyard,* the eastern district of this court held that the foregoing covenant did not prohibit the use of the lot as a street:

> The covenant basically restricts the use of the tract in issue to "residential purposes." Our Courts have consistently held that similar restrictive covenants do not prohibit the use of the land as a street.... Intervenors, however, argue that the language of the covenant in issue here differs from the language of the covenants in the cited cases. Inter-

venors focus on the part of the present covenant which reads: "The above described [lot] being subject to restriction on the use of said parcel to residential purposes only." Even limiting the covenant to this single sentence, it strains common sense to construe the covenant as prohibiting a street, which would provide a thoroughfare for the residents. But, the covenant here goes on "to exclude the establishment of Trailer Courts or the houseing [sic] of Trailers thereon and to exclude the building of low roof type residences which do not extend, in height, above the ground level." Viewed in its complete form, the restriction clearly is focused on the type of structure to be put on the land and does not prohibit the use of the land as a street.

*City of Ste. Genevieve,* 765 S.W.2d at 365–66.

■ We find Covenant No. 1 to be nearly identical to the restrictive covenants construed by our appellate courts in *Vinyard, Keener* and *Ste. Genevieve.* Accordingly, we hold that Covenant No. 1 is unambiguous and, by its plain terms, only restricts the type of structures that may be erected on Lots 1–3A. This covenant does not prohibit Defendant from using a portion of these lots as a residential street.

We believe our conclusion is in accord with the intentions of the original grantors, the Hayes. The lots in Unit 2 vary markedly in size and shape. For example, Lot 13 in Block C was platted to be approximately 400 feet on each side. The only street access to this lot was via Chrisman lane, which dead-ended in a terminal connection to the southwestern most 50 feet of Lot 13. Covenant No. 5 of the 1955 Covenants expressly permitted all building lots to be subdivided subject to certain frontage requirements. Lots subdivided from

Lot 13 were only required to have 50 feet of frontage. Therefore, the use of some portions of the lots in Unit 2 to develop and plat new streets was necessarily contemplated when the restrictive covenants were adopted. Otherwise, the provision allowing Lot 13 to be subdivided would be meaningless since, as platted, the lot only had 50 feet of frontage and no more could ever be created. We decline Plaintiffs' invitation to construe Covenant No. 1 in a fashion that leads to such an absurd result.

Plaintiffs also argue that replatting Lots 1–3A violates the 1955 Covenants. We find this argument unpersuasive for three reasons.

First, we note that the 1955 Covenants do not contain an express prohibition against replatting lots in Unit 2. Consequently, replatting is permissible so long as it does not violate the other restrictive covenants adopted in 1955. *See Connelly v. Schafer,* 837 S.W.2d 344, 346–47 (Mo. App.1992); *Udo Siebel–Spath v. Construction Enterprises, Inc.,* 633 S.W.2d 86, 88 (Mo.App.1982).

Second, we reject Plaintiffs' argument that replatting is prohibited by the portion of Covenant No. 1 which states that "[n]o building shall be erected, altered, placed or permitted to remain on any lot other than one detached single family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars and the necessary accessory buildings well constructed." It is well-settled that language of this type in a restrictive covenant is directed at the type of structures that can be built and their permissible uses, rather than the use of the land itself. *Blevins v. Barry–Lawrence County Ass'n for Retarded Citizens,* 707 S.W.2d 407, 410 (Mo. banc 1986); *Vinyard* 399 S.W.2d at 106; *Dierberg v. Wills* 700 S.W.2d 461, 468 (Mo.App.1985); *Keener* 442 S.W.2d at 161–62. Therefore, Cove-

nant No. 1 simply has no application to the issue of whether replatting is permitted.

Third, even assuming Covenant No. 1 does have a bearing on replatting, the only asserted violation Plaintiffs can identify is that replatting would result in three building lots in Unit 2 (Lots 1–3A) being converted into six smaller building lots in the Olde Ivy Subdivision (lots 68–73). This alleged violation stems from the fact that more than three houses could be built on the land originally platted as Lots 1–3A. Plaintiffs' argument fails because the 1955 Covenants did not mandate that only one detached single family dwelling be constructed per single lot, as originally platted. For example, Covenant No. 4 permits an owner of more than one adjoining lot to construct a house or garage over the lots' dividing line. Looking strictly at the original plat, this would authorize construction of less than one house per lot. Covenant No. 5, on the other hand, expressly permits lots to be subdivided into several smaller building lots (subject to certain frontage requirements) because of the large size and varying shapes of the lots in Unit 2. Looking strictly at the original plat, this would authorize construction of more than one house per lot. In our view, the grant of express permission to subdivide necessarily carries with it the grant of authority to replat the newly-subdivided lots. Taken as a whole, the 1955 Covenants are unambiguous, and nothing contained therein prohibits Defendant from replatting Lots 1–3A.

### Covenant No. 10 from 2002

Covenant No. 10 states that "[n]o lot, nor any part of any Lot, may be 'replatted' as a separate Subdivision, nor as a portion of another Subdivision. No lot, nor any part of any Lot, may be used, deeded, nor dedicated in any manner for the purpose of a public street, except for street and

drainage maintenance and improvement of existing streets within Southern Hills, Unit No. 2." This additional covenant was passed by majority vote of the Unit 2 lot owners on the very day that the City of Springfield accepted Defendant's final plat of the Olde Ivy Subdivision. As Plaintiffs argue, the terms of this additional covenant clearly and unambiguously prohibit any lot, or part thereof, from being replatted or used as a public street. The covenant was obviously drafted to serve this very purpose. In response, Defendant contends Covenant No. 10 is invalid and unenforceable because it imposes new burdens upon the lot owners in Unit 2.

In the absence of a contractual provision to the contrary, a restrictive covenant may be amended at any time with the unanimous consent of all lot owners. *Pearce v. Scarcello*, 920 S.W.2d 643, 645 n. 3 (Mo.App.1996); *Kauffman v. Roling*, 851 S.W.2d 789, 792 (Mo.App.1993). Property owners can also agree, by unanimous consent, to have restrictions that do not apply equally to all affected property owners. *See Steve Vogli & Co. v. Lane*, 405 S.W.2d 885, 889–90 (Mo.1966); *Saladin v. Jennings*, 111 S.W.3d 435, 444 (Mo.App.2003). When a new restrictive covenant is not unanimously adopted, however, different considerations apply. We find substantial support for Defendant's argument that a new restrictive covenant, adopted by majority vote only, is invalid and unenforceable if it imposes new burdens upon the affected property owners.

In *Van Deusen v. Ruth*, 343 Mo. 1096, 125 S.W.2d 1 (1938), the originally-adopted subdivision restrictions for Davis Place permitted the building of apartments, stores and other commercial buildings on lots fronting Clayton, North and South roads. The restrictions stated that they could be modified, amended, released or extinguished at any time after ten years by a vote of the owners of 75% of the subdivision's frontage. *Id.* at 2. Eleven years later, an amendment to the restrictions was adopted. The amendment prohibited the erection of apartments or commercial buildings on the lots fronting Hanley, Clayton, North and South roads. *Id.* Plaintiffs, whose lots were affected by the change, filed a suit in equity to cancel the amendment because it imposed additional burdens on the subdivision. The trial court ruled in plaintiffs' favor, and the Missouri Supreme Court upheld that ruling on appeal:

> We are of the opinion that the ruling of the trial court was correct. Note the language of the provision authorizing a change in the restrictions: "All or any of the foregoing provisions or restrictions may be modified, amended, released or extinguished at any time after ten (10) years * * *." A mere reading of the above suggests to the mind that the intention was to permit the existing restrictions to be alleviated, that is, made less harsh, or to be entirely extinguished. It would certainly require a strained construction to hold that the clause authorized any new and additional restrictions and burdens to be added. The words "modify" and "amended" may have various meanings, but they must be interpreted in the light of the context in which they are used. When so interpreted in this case they cannot be given a meaning which would authorize new burdens to be added.... Appellant concedes that restrictive covenants upon land are to be strictly construed. That has been the policy of the law.... To uphold the so called modification agreement in this case we would be compelled to construe the clause under discussion most liberally in order to authorize new restrictions to be fostered upon the subdivision. This would mean overturning the above principle of law, conceded by

appellant to be in force in this state as well as other jurisdictions.

*Id.* at 2–3.

The Supreme Court's decision in *Van Deusen* was followed by the eastern district of this court in *Jones v. Ladriere*, 108 S.W.3d 736 (Mo.App.2003). In *Jones*, the property owner, Ladriere, sought to construct a new residence on a vacant lot in the subdivision. The original subdivision restrictions did not prohibit the proposed construction. The subdivision restrictions provided that they could be "altered, amended, changed or revoked" by a two-thirds vote. *Id.* at 739. After Ladriere had plans drawn up and obtained a building permit, a large majority of the other lot owners passed Amendment No. 4, a new restrictive covenant which specifically prohibited the construction on Ladriere's lot. The trial court found Amendment No. 4 enforceable and enjoined the construction. After reviewing the provision concerning how changes in the subdivision restrictions could be made, the appellate court reversed the trial court's judgment:

> As in *Van Deusen*, we find nothing in this language that purports to give Association members the power to add new burdens or restrictions not found in the original Agreement by a two-thirds vote. Contrary to Association's contentions, Amendment No. 4 does represent a new burden or restriction on Lot Owner. As construed by the trial court, Lot Owner was authorized to construct a residence on his lot under the terms of the original agreement. Amendment No. 4 would prohibit such construction. We hold that Amendment No. 4 is invalid to the extent that it prohibits Lot Owner from constructing a residence on his lot.

*Id.* at 740.

In *Webb v. Mullikin*, No. 83735, 142 S.W.3d 822, 2004 WL 1440331 (Mo.App. E.D. June 29, 2004), the original subdivision restrictions adopted in 1960 provided that they could be amended all or in part at any time by a majority of the lot owners. In 1990, amended subdivision restrictions were adopted by majority vote. The amended restrictions retained the right of lot owners to amend the restrictions by majority vote. In 2002, a second set of amended restrictions were adopted by majority vote. These 2002 amendments included new yearly and special monetary assessments for club maintenance. Eight property owners in the subdivision brought an action to enjoin enforcement of the 2002 amendments. Citing *Van Deusen* and *Jones*, the eastern district held that the authority granted in the subdivision restrictions to amend them by majority vote did not carry with it the right to impose new burdens on lot owners. "As in those two cases, the amendment language here does not give a majority of the lot owners the power to add new burdens not found in the 1990 agreement. We interpret the phrase 'may amend these restrictions' as permitting a majority of lot owners to change existing covenants but not to add new or different covenants, as is the case in the amended agreement." *Webb v. Mullikin*, No. 83735, 142 S.W.3d at 827 (Mo.App. E.D. June 29, 2004).

In the case at bar, Covenant No. 8 from 1955 stated that "[t]hese Protective Covenants may be amended, repealed or added to at any time by the owners of a majority of the lots in said addition." As in *Van Deusen, Jones* and *Webb*, we strictly construe this language to mean that the Unit 2 lot owners may change, repeal or supplement existing covenants, but they may not add new burdens or different covenants by majority vote. Covenant No. 10 constitutes a new burden on Unit 2 lot owners because it specifically prohibits what the original restrictive covenants per-

mitted. Accordingly, Covenant No. 10 is invalid and unenforceable against Defendant since this new covenant was not adopted by unanimous consent of all lot owners.

We conclude that, as a matter of law, Covenant No. 1 and Covenant No. 10 do not prohibit Defendant from using portions of Lots 1–3A as a public street or from replatting these lots as a part of the Olde Ivy Subdivision. Based on our review of the record presented below, there are no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law. Rule 74.04(c)(6). Therefore, the summary judgment entered in Defendant's favor is affirmed.

RAHMEYER, C.J.-P.J., and PARRISH, J, concur.