Henry STROBL, Frank Sullivan, and
Mary Armbruster, Plaintiffs–
Appellants,

v.

Robert LANE and Carole Lane,
Defendants–Respondents.

No. 27798.

Missouri Court of Appeals,
Southern District,
Division Two.

April 29, 2008.

Dennis Dwight Reaves, Stockton, MO, for Appellant.

Jason Keith Rew, Blue Springs, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Henry Strobl, Frank Sullivan and Mary Armbruster (hereinafter referred to individually by their surnames and collectively as Plaintiffs) filed a petition for a permanent injunction against Robert and Carole Lane (Defendants). The petition alleged that Plaintiffs comprised the three members of Sac Valley Estates (Estates) Architectural Control Committee (ACC). Plaintiffs sought to enjoin Defendants from proceeding with the construction of a residence in Estates because: (1) the proposed dwelling was a "mobile home" that violated the Estate's Amended Declaration of Restrictions (the Restrictions); and (2) Defendants did not provide "construction plans and specifications and a plan showing the location of the structure" to the ACC as required by the Restrictions. After a bench trial, the trial court ruled against Plaintiffs on each of these contentions and denied injunctive relief. On appeal, Plaintiffs challenge the trial court's findings that: (1) Defendants' proposed home was not a "mobile home" prohibited by the Restrictions; and (2) Defendants complied with the restriction dealing with the submission of plans and specifications. This Court affirms the trial court's judgment.

## I. Standard of Review

■■■■ In this court-tried case, our review is governed by Rule 84.13(d).[1] We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Ewanchuk v. Mitchell*, 154 S.W.3d 476, 478 (Mo.App. 2005).[2] The trial court's judgment is presumed correct, and the Plaintiffs have the burden of proving it erroneous. *Surrey Condominium Ass'n, Inc. v. Webb*, 163 S.W.3d 531, 535 (Mo.App.2005). We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Bacon v. Uhl*, 173 S.W.3d 390, 396 (Mo.App.2005). Credibili-

**1.** All references to rules are to Missouri Court Rules (2007).

**2.** *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

ty of the witnesses and the weight to be given to their testimony is for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Christian Health Care of Springfield West Park, Inc. v. Little*, 145 S.W.3d 44, 48 (Mo.App.2004). "We defer to the trial judge's superior opportunity to assess the witnesses' credibility." *Lee v. Hiler*, 141 S.W.3d 517, 520 (Mo.App.2004). Our summary of the evidence presented at trial, which is set forth below, has been prepared in accordance with these principles.

## II. Factual and Procedural Background

The Restrictions were originally recorded in 1969 by developer Sac Valley Estates, Inc.[3] In relevant part, they state:

[2.] ARCHITECTUAL [sic] CONTROL. No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the Architectural Control Committee as to quality of workmanship and material, harmony of exterior design with existing structures, and as to the location with respect to topography and finished grade elevation.... Approval shall be as provided below.

. . . .

7. TEMPORARY STRUCTURES. No structure of a temporary character, trailer, mobile home, basement, tent, shack, barn or other out buildings shall be placed on any lot at any time, either temporarily or permanently.

. . . .

15. ARCHITECTURAL CONTROL COMMITTEE. The Architectural Control Committee shall be composed of three representatives elected by majority vote of recorded owners of lots in SAC VALLEY ESTATES....

16. PROCEDURE. The Architectural Control Committee's approval or disapproval as required in these covenants shall be in writing. In the event the Architectural Control Committee fails to approve or disapprove within thirty (30) days after plans and specifications have been submitted to it, approval will not be required and the related covenant shall be deemed to have been fully complied with.

In early April 2005, Defendants signed a contract to purchase Lot 30 in Estates. Defendants planned to excavate a basement, place a manufactured home on the basement, and attach a two-car garage. Defendants were aware that they were required to submit plans and specifications for the proposed construction to the ACC pursuant to paragraph 16 of the Restrictions. At that time, the Plaintiffs were the three members of the ACC. The real estate agents selling the property were Kathy Bridges (Bridges) and her husband.

On April 18, 2005, Defendants gave Bridges a blue folder to present to the ACC. This folder, which was admitted at trial as Exhibit W, contained the following: (1) two Polaroid photographs (front and back) of Defendants' proposed home; (2) a cover letter dated April 15, 2005, introducing Defendants, notifying the ACC of their purchase of Lot 30 and providing an overview of their construction plans; (3) detailed specifications of the structure, exterior, windows, doors, heating, plumbing and electrical systems of the house; and (4) a plot plan with an accompanying written description. Acting on Defendants' behalf, Bridges presented the folder to ACC member Strobl that same day. He

---

**3.** In 1972, the original restrictions were amended, but none of the amendments are germane to the issues presented in this appeal.

looked at the photographs and told Bridges to tell Defendants "hell no!" He then returned the folder to Bridges. Strobl did not give the folder to any of the other ACC members, but they were informed by Strobl that he thought the Defendants were proposing construction of a "mobile home." During the next 30 days, the ACC neither approved nor disapproved in writing of the materials submitted by Defendants. By the end of April, Defendants had purchased lot 30.

On May 19, 2005, Defendants sent each ACC member a certified letter notifying them that Defendants intended to proceed with the placement of their manufactured home on Lot 30 because the ACC had failed to disapprove Defendants' plans in writing within 30 days as required by paragraph 16 of the Restrictions. These certified letters were sent 31 days after the blue folder was delivered to Strobl.

In early June 2005, Defendants signed a contract to purchase the manufactured home. On July 7, 2005, the ACC sent a certified letter, signed by each committee member, to Defendants. Citing paragraph 7 of the Restrictions, the letter purported to disapprove of Defendants' floor plans, elevation drawings and information sheet. Thereafter, Defendants notified the ACC that the disapproval came too late and that they were proceeding with construction of their home.

On November 18, 2005, Plaintiffs filed a petition seeking a permanent injunction to enjoin Defendants from building their home. The case was tried in April 2006. Following the presentation of evidence, the trial court denied Plaintiffs' request for injunctive relief. The court decided Defendants' manufactured home was not a "mobile home" that was prohibited by paragraph 7 of the Restrictions. According to the court, however, the main issue was whether the materials contained in the blue folder (Exhibit W) complied with the requirements in paragraph 2 that "construction plans and specifications and a plan showing the location of the structure" be presented to the ACC. The court found in favor of Defendants on that issue. Because Defendants' submission complied with the requirements in paragraph 2, that triggered the requirement in paragraph 16 of the Restrictions for the ACC to respond in writing within 30 days. As the court explained in its judgment, the ACC's failure to do so meant its approval was no longer required:

> Plaintiff Henry Strobl, took it upon himself to reject, outright, the submittals in Exhibit "W" without even looking at all of the packet and without presenting it to the rest of the Committee. As a member of the [ACC], Henry Strobl was an appropriate person to have received the information in Exhibit "W". He spoke and acted as a member of and on behalf of the committee. If he, acting for the Committee, wanted to rely upon the terms of [the Restrictions], he should have complied with them himself, which he did not do. By failing to respond to the Defendants' proposal in writing, within thirty (30) days thereafter, the Committee's approval was not required thereafter.

This appeal followed. Although Plaintiffs challenge the trial court's determination that Defendants' manufactured home was not a "mobile home" in their first point, we need not address the issue because Plaintiffs' second point is dispositive of their appeal.

### III. Discussion and Decision

■ In Plaintiffs' second point, they contend the trial court erred in determining that the ACC's approval of the construction of Defendants' home was not required. Plaintiffs argue that: (1) the trial

court improperly substituted its opinion for that of the ACC by deciding that paragraph 2 of the Restrictions did not require the submission of blueprints; and (2) since blueprints were required, Defendants' failure to provide same did not trigger the 30–day approval period contained in paragraph 16 of the Restrictions.

■■■ As the parties seeking to enforce these particular paragraphs of the Restrictions, Plaintiffs bore the burden of proving Defendants' noncompliance. *See Bumm v. Olde Ivy Development, LLC,* 142 S.W.3d 895, 899–900 (Mo.App.2004). Reduced to its essence, Plaintiffs' argument is that the Restrictions required Defendants to submit blueprints as their plans and specifications. This Court disagrees. As we seek to interpret and apply the relevant paragraphs of the Restrictions to the facts of this case, we bear in mind that:

> Restrictions upon the use of real property, being in derogation of the fee, are not favored. They are strictly construed. Doubts in connection therewith are resolved in favor of the free use of the property. Restrictive covenants will not be extended by implication to include anything not clearly expressed in them.

*Vinyard v. St. Louis County,* 399 S.W.2d 99, 105 (Mo.1966); *Bumm,* 142 S.W.3d at 899–900. "Terms used in restrictive covenants should be applied in accordance with their plain, everyday or popular meaning." *Bumm,* 142 S.W.3d at 899.

Paragraph 2 of the Restrictions requires ACC approval of "construction plans and specifications and a plan showing the location of the structure[.]" The word "blueprints" is not used, and the Restrictions nowhere define what "construction plans and specifications" is intended to mean. We must strictly construe this phrase in favor of the free use of property and resolve any doubts in favor

of Defendants. The Restrictions do not clearly require Defendants to submit blueprints to the ACC, and this Court declines Plaintiffs' invitation to extend the meaning of this language by implication to include any such requirement. *See Vinyard,* 399 S.W.2d at 105; *Bumm,* 142 S.W.3d at 899.

Whether Defendants complied with the requirement in paragraph 2 that they submit "construction plans and specifications" to the ACC was a fact issue for the trial court to decide. Defendants testified that their folder included: (1) two Polaroid photographs of Defendants' proposed home; (2) a cover letter providing an overview of the construction plans; (3) detailed specifications of the structure, exterior, windows, doors, heating, plumbing and electrical systems of the house; and (4) a plot plan with an accompanying written description. Defendants' testimony was corroborated by Bridges, who recalled seeing papers along with the photographs in the blue folder she delivered. While Strobl testified that he only recalled two Polaroid photographs being in the blue folder, the trial court was free to disbelieve that testimony. *Christian Health Care of Springfield West Park, Inc. v. Little,* 145 S.W.3d 44, 48 (Mo.App.2004). "We defer to the trial judge's superior opportunity to assess the witnesses' credibility." *Lee v. Hiler,* 141 S.W.3d 517, 520 (Mo.App.2004). When we strictly construe the words used in paragraph 2 and resolve any doubts in Defendants' favor, the blue folder submitted by Defendants complied with the Restrictions. The folder contained a plot plan that showed the location of the structure, as well as construction specifications in both overview and detailed formats.

■■■ Whether the 30–day time period in paragraph 16 was triggered also presented a question of fact for the trial court to decide. Strobl testified he was a member of the ACC, and he admitted Defendants'

blue folder was delivered to him on April 18, 2005. There is substantial evidence to support the trial court's finding that Strobl was an appropriate person to receive construction plans and specifications and that he acted for the entire committee in orally rejecting them. Furthermore, it is undisputed that the ACC neither approved nor disapproved the plans in writing within the next 30 days. Based on the plain language contained in paragraph 16, the ACC's failure to act meant that its approval would not be required and that the requirements of paragraph 2 are deemed to have been complied with in full. Point II is denied.

The judgment of the trial court is affirmed.

BARNEY, and LYNCH, JJ., Concurs.