**Rick BATES and Lana Bates, Husband and Wife, et al., Appellants,**

v.

**May Margaret WEBBER, and Daniel Webber, Respondents.**

No. 28768.

Missouri Court of Appeals, Southern District, Division II.

June 26, 2008.

---

**3.** All rule references are to Missouri Court Rules (2006).

Jason J. Higdon, Spencer, Scott & Dwyer, P.C., Joplin, MO, for appellants.

Charles S. Genisio, Dominguez, Genisio, Parrish, Cross & Hawkins, Joplin, MO, for respondents.

ROBERT S. BARNEY, Presiding Judge.

Appellants Rick Bates ("Mr. Bates") and Lana Bates (collectively "the Bateses") appeal the trial court's judgment in favor of May Margaret Webber ("Ms. Webber") and her son, Daniel Webber ("Mr. Webber"), in which the trial court denied Appellants' request for a permanent injunction and declaratory relief based on the interpretation of deed restrictions.[1] Appellants posit three points of trial court error.

Viewing the evidence in the light most favorable to the trial court's judgment, *Wallace v. Grasso*, 119 S.W.3d 567, 572 (Mo.App.2003), the record reveals Appellants and Ms. Webber all own property in a subdivision ("the Subdivision") located in an unincorporated portion of Jasper County, Missouri. The Subdivision was originally developed and platted by Jerry Merrill ("Mr. Merrill"), who purchased the rectangular, 80–acre tract of land in the 1970's. At some point in time, Mr. Merrill divided the land into 5–acre lots and built a private road ("County Road 208") down the center of the subdivision with the 5–acre lots abutting both sides of the road. County Road 208, which is paved, ends in a cul-de-sac. At the time he created the Subdivision, Mr. Merrill also placed a deed restriction on the tracts. The deed restriction, which was recorded in 1991, sets out that: "[a]bove property being subject to the following restrictions: residential use only; no mobile homes or modular homes and this restriction is to run with the land."

In 2000, the Bateses purchased a tract of land in the Subdivision with an existing home on it. The tract they purchased is the next to last tract at the end of County Road 208. In 2001, Ms. Webber purchased an undeveloped lot for investment purposes north of and adjacent to the Bates' tract. Ms. Webber's lot contains half of the cul-de-sac and is the termination point for County Road 208. Further, Mr. Webber, Ms. Webber's son, owns a tract of land which adjoins her tract to the east ("the Adjacent Tract"), but Mr. Webber's property is not part of the Subdivision.[2] As best we discern, Mr. Webber

---

1. In addition to the Bateses, it appears the following people joined in the petition in this matter: Tom and Sue Gosch; Thomas Edward Jones, III, and Gwen Jones; Mark and Bonny Greninger; Rob and Tina Pennington; John and Sandy Beerly; Brenda Beerly and John E. Beerly, Jr.; and Jeff and Michelle Speak (collectively "Appellants").

2. It appears another of Ms. Webber's sons, Steve Webber, is a co-owner of the Adjacent Tract; however, he is not a party to this litigation.

resides on the Adjacent Tract, which is landlocked and inaccessible by any existing roads.

In 2005, Ms. Webber contacted the Bateses about having their adjoining property line surveyed so that she could clear and construct a fence line. The Bateses requested Ms. Webber clear the land farther back from their property line, but did not suggest any measurements regarding the width or breadth of the clearing. Ms. Webber later informed the Bateses she was building a private road across her land so that her son could have a means of ingress and egress from the Adjacent Tract. Thereafter, Ms. Webber cleared her property in a fifty-foot-wide strip ("the Road") beginning at the cul-de-sac and terminating at the Adjacent Tract. The Road is located fifty to seventy-five feet from the corner of the Bates' home and is located entirely on Ms. Webber's property.

On April 5, 2006, Appellants filed their "Petition" in this matter and a "Second Amended Petition" was filed on March 9, 2007. Appellants' petition requested the following remedies: Count I a permanent injunction prohibiting Respondents from "constructing, maintaining, or using ..." the Road; Count II enforcement of the aforementioned restrictive deed covenant requiring the Subdivision tracts to be used for "residential use only;" Count III for negligence in constructing the Road "too close" to the Bates' property; Count IV for nuisance in interfering with the Bates' "enjoyment of their property" and for diminishing the value of the Bates' property by $67,000.00; and Count V for a declaratory judgment to determine "the interpretation and enforcement of the restrictive [deed] language...."[3]

A trial was held on August 30, 2007. At the close of all the evidence, the trial court took the matter under advisement. On August 31, 2007, the trial court entered its "Findings of Fact, Conclusions of Law, and Judgment." In its findings, the trial court found that Ms. Webber has cleared fifty feet of "brush, trees and other growth ..." from her property to provide road access to her son's adjoining property; that Ms. Webber has no "immediate plans to build on her real property" nor to enhance the Road except to "put gravel down ..." in the future; and that the Road on Ms. Webber's property does not reduce the value of the Bates' home. The trial court went on to find that "Missouri law does not look favorably on deed restrictions and as such the restrictions will not be extended to include anything not clearly expressed in them. If there are any doubts as to the restrictions they are to be resolved in favor of the free use of the property." Additionally, the court found that "when a restriction states for 'residential use' and describes what type of residential use can or [cannot] be placed on the property then that restriction does not prohibit having a road constructed on the property." As a result, the trial court ruled in favor of Respondents "on Count[s] I, II, and V of [Appellants'] Amended Petition." The trial court also ordered Appellants to pay court costs. This appeal followed.

 "Issuance of an injunction is an equitable remedy. Similarly, although a declaratory judgment action is *sui generis,* its 'historical affinity is equitable and such actions are governed by equitable principles.'" *Inman v. Missouri Dept. of Corrections,* 139 S.W.3d 180, 185 (Mo.App.2004) (quoting *Preferred Physicians Mut. Mgmt. Group, Inc. v. Preferred Physicians Mut. Risk Retention Group,* 916 S.W.2d 821, 823 (Mo.App.1995)) (internal citation omitted). In reviewing a court-

---

**3.** We note Counts III and IV were voluntarily dismissed by Appellants.

tried equitable action, "the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or unless it erroneously applies the law." *Systematic Bus. Servs., Inc. v. Bratten,* 162 S.W.3d 41, 46 (Mo.App.2005); *see Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). When setting aside a judgment on the ground that it is against the weight of the evidence, appellate courts should proceed with caution. *Murphy,* 536 S.W.2d at 32. An appellate court should set aside a decree or judgment on the ground that it is against the weight of the evidence only if it has a firm belief that the decree or judgment is wrong. *Id.* "When reviewing a court-tried case, we view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Ortmann v. Dace Homes, Inc.,* 86 S.W.3d 86, 88 (Mo. App.2002). "We defer to the trial court's determinations as to the credibility of witnesses." *Id.*

■ Appellants' first point relied on asserts the trial court erred in failing to award them a permanent injunction because "there was no substantial evidence to support the [t]rial [c]ourt decision that there was no reduction in the value of [the Bates'] property caused by the [R]oad. . . ." Specifically, Appellants challenge Respondents' expert's determination that the Road had no net effect on the value of the Bates' property and the expert's finding that the Road had converted the Bates' property into a corner lot, thereby enhancing the value of the property. Appellants maintain the trial court's decision was contrary to the weight of the evidence in that their expert testified that the proximity of the Road to the Bates' home necessarily altered their ability to use and enjoy the property as they did before the Road existed, and their expert testified that the Road negated the primary purpose of a cul-de-sac, which is to provide security and reduce traffic.

■ "The purpose of an injunction is to restrain actual or threatened acts that constitute a real injury." *Metmor Financial, Inc. v. Landoll Corp.,* 976 S.W.2d 454, 463 (Mo.App.1998). "A permanent injunction should be granted sparingly in clear cases only, and the decree should be framed to afford relief to which complainant is entitled and not to interfere with legitimate and proper action by those against whom it is directed." *Id.* at 463. "A permanent injunction acts as a final disposition of the merits of a case." *Id.*

At trial, Mr. Bates testified that he and his wife paid $238,000.00 for their property in 2001 and they added approximately $8,000.00 in improvements to the home since that time. Bob Hunter ("Mr. Hunter"), a real estate appraiser who testified for Appellants, explained that he was asked by Appellants to prepare a "before-and-after opinion of value based on the . . ." construction of the Road on Ms. Webber's property. Mr. Hunter stated that in his opinion the Bates' property was worth $350,000.00 prior to construction of the Road, but it was valued at $67,000.00 less after construction of the Road. He related that because the Road does not abut the Bates' property line he would not consider their property to be a corner lot. He also related developers often use roads with cul-de-sacs on them as a traffic control solution to provide more of a sense of neighborhood and for security purposes. He stated the addition of the Road on Ms. Webber's land defeats the purpose of the County Road 208 cul-de-sac. He also stated he had viewed a 1998 appraisal provided to him by the Bateses which appraised their property at $250,000.00.

On the other hand, Respondents' real estate appraiser, Galen Carter ("Mr. Carter"), testified that he viewed the properties at issue and compiled a summary report regarding the estimated market value of the Bates' property. He testified the value of the Bates' property was $280,000.00 and that "the [R]oad on [Ms. Webber's property] did not cause any loss in value to the [Bates'] property." He stated he assumed the Road "was for the purpose of providing access to [Mr.] Webber's property behind the [S]ubdivision;" he further assumed Respondents intended to eventually build a residential development on that piece of property in the future; and that he did not believe any deed restrictions would effect his evaluation of the property.

Mr. Carter likewise related he measured the Bates' home as being seventy-three feet from the Road and he believed people utilizing the Road would only be able to see the Bates' home in the wintertime. Further, he felt the Road essentially converted the Bates' property into a corner lot, which is another reason the Road does not decrease the value of their property.

The trial court determined that the Bates' expert valued the property at "$283,000.00 with the [Road]. [Respondents'] expert placed the value of [the Bates'] home at $280,000.00. Both values are a significant increase from the purchase price" of $238,000.00. Further, the trial court noted it "did not find the value of [the Bates' home] if the [Road] was not there of $350,000.00 testified to by [the Bates'] expert as being credible." In making its decision, it was the trial court's prerogative to believe or disbelieve the testimony and evidence of any witness including testimony offered by experts. *City of Branson v. Estate of LaFavre*, 9 S.W.3d 755, 759 n. 1 (Mo.App.2000). As always, we defer to such decisions on cred-

ibility and the trial court was well within its province in choosing to believe the testimony of Mr. Carter over that of Mr. Hunter. *See Harrison v. DeHeus*, 230 S.W.3d 68, 76 (Mo.App.2007). There was substantial evidence offered at trial upon which the trial court could base its finding that the Road did not diminish the value of the Bates' property. Point denied.

We now turn to Appellants' second and third points relied on which we shall address together. Appellants' second point relied on maintains the trial court erred in failing to award Appellants a permanent injunction and enforcing the deed restriction because it erroneously declared or applied the law as to deed restrictions in that, although doubts as to the application of deed restrictions are generally resolved in favor of the free use of land, Missouri law holds that that principle should not be applied in a manner that would defeat the purpose of the restriction. In their third point relied on they maintain the trial court erred in "failing to award [Appellants'] claim for declaratory judgment declaring that the [R]oad violates the deed restriction...." Appellants assert the trial court erroneously applied the law relating to deed restrictions because "the deed restriction is not solely a limitation as to permissible structures on the lot; the language after 'residential use only' is mere surplusage, and the restriction therefore limits not only the type of permitted structures, but also prohibits any non-residential use, including a road."

At the outset, we observe that restrictions upon the free use of land are not favorites of the law. *See Daniel v. Galloway*, 861 S.W.2d 759, 760 (Mo.App. 1993). It is settled law that

> [r]estrictions upon the use of real property, being in derogation of the fee, are not favored. They are strictly construed. Doubts in connection therewith

are resolved in favor of the free use of the property. Restrictive covenants will not be extended by implication to include anything not clearly expressed in them. *Vinyard v. St. Louis County,* 399 S.W.2d 99, 105 (Mo.1966). "This principle, however, should never be applied in a manner that would defeat the plain and obvious purpose and intent of the restriction. Restrictive covenants are intended to preserve the aesthetic and residential nature of the subdivision." *Perry v. Spavale,* 828 S.W.2d 709, 711 (Mo.App.1992) (internal citation omitted); *see Speedie Food Mart, Inc. v. Taylor,* 809 S.W.2d 126, 129–30 (Mo.App.1991). "[T]he proponent[ ] of the application of a restriction bears the burden of proving the extent and application of the restriction." *Perry,* 828 S.W.2d at 711.

In its judgment, the trial court based its ruling on *Bumm v. Olde Ivy Development, LLC,* 142 S.W.3d 895 (Mo.App.2004). In *Bumm,* 142 S.W.3d at 896, a summary judgment matter, the plaintiffs, who owned lots in a subdivision, sought to enforce restrictive covenants against the defendant, who wanted to re-plat certain lots it owned in the subdivision in order to build a residential street. The "protective covenants" at issue stated, *inter alia,* that "[n]o lot or any part thereof shall be used except for residential purposes." *Id.* at 897. The defendants requested and were granted the right from the city to construct a residential street through one of the lots it owned in the subject subdivision and the plaintiffs filed suit requesting declaratory relief and an injunction against the construction of the residential street. *Id.* at 898–99. The trial court granted summary judgment in favor of the defendant.

On appeal, the *Bumm* plaintiffs argued the trial court erred in granting summary judgment against them because "building a residential street" on one of the subdivision lots would not be "using the lots for residential purposes" as set out in the pertinent restrictive covenants. *Id.* at 900. The *Bumm* court noted

"A restrictive covenant is not open to judicial construction if it is unambiguous. The intent of the parties, as expressed in the plain language of the restrictive covenant, should be given effect by the courts. Terms used in restrictive covenants should be applied in accordance with their plain, everyday or popular meaning. The language used in the entire instrument should be considered, however, and not just one clause. Such covenants are to be interpreted narrowly, and in so doing the court must be careful not to go beyond the express stipulations.

Where there is doubt as to the meaning of a restriction, it is proper to consider the parties' situation, together with accompanying circumstances, to determine the intention of the parties. This includes an inquiry into the purpose the parties sought to accomplish by the restrictive covenant. The critical time in determining what was intended by the restrictions is at the time the subdivision was platted."

*Id.* at 899–900 (quoting *Daniel,* 861 S.W.2d at 761). The *Bumm* court then determined the restrictive covenant was "unambiguous and, by its plain terms, only restricts the type of structures that may be erected on [the lots at issue]. This covenant does not prohibit the [d]efendant from using a portion of these lots as a residential street." *Bumm,* 142 S.W.3d at 901. Accordingly, the appellate court upheld the trial court's ruling. *Id.*

Similarly, the Supreme Court of Missouri in *Vinyard,* 399 S.W.2d at 105, examined the issue of whether the use of a portion of a lot as a driveway or roadway

violated a subdivision restriction. The restriction set out that " '[a]ll lots shall be known and described as residential lots. No structure shall be erected on any residential building lot other than one detached single family dwelling which shall not exceed two stories in height.' " *Id.* Our high court narrowly construed the restrictive covenants and found

> [i]n the restrictions now before us there is no prohibition of the use of any lot in the subdivision as a roadway, driveway or street leading to adjacent land. Neither [covenant] prohibits the use of any lot for any other than residential purposes. It is not the use of the *land* that is restricted. The restriction goes to the *type of structure to be erected* upon the land and the *use of the structure* erected thereon.

*Id.* at 106 (emphasis added). It then determined that the restriction did not prevent the use of land as a driveway to apartments on land not bound by the restrictions. *Id.*

Further in *City of Ste. Genevieve v. Ste. Genevieve Ready Mix, Inc.*, 765 S.W.2d 361, 365 (Mo.App.1989), a restrictive covenant set out that it "restricts the use of the tract in issue to 'residential purposes.' " In finding that "[o]ur Courts have consistently held that similar restrictive covenants do not prohibit the use of the land as a street," the *City of Genevieve* court noted that

it strains common sense to construe the covenant as prohibiting a street, which would provide a thoroughfare for the residents. But, the covenant here goes on "to exclude the establishment of Trailer Courts or the [housing] of Trailers thereon and to exclude the building of low roof type residences which do not extend, in height, above the ground level."

*Id.* at 366. Thus, the *City of Genevieve* court found that "[v]iewed in its complete form, the restriction clearly is focused on the type of structure to be put on the land and does not prohibit the use of the land as a street." *Id.*[4]

 Here, the restrictive covenant in the deed set out that the lots in the Subdivision were to be used for "residential use only." The term "residential" has been defined as "used as a residence or by residents;" "restricted to or occupied by residences;" and "of or relating to residence or residences." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1060 (11th ed.2005). An unambiguous reading of the deed's restrictive provision does not prohibit the construction of a roadway or driveway in conjunction with residential use. "Restrictive covenants are examined in the context of the entire instrument and not in just a single clause." *Kauffman v. Roling*, 851 S.W.2d 789, 792 (Mo.App.1993). Read in its totality, we determine the deed's re-

---

4. *See also Albrecht v. State Hwy. Comm'n*, 363 S.W.2d 643, 646 (Mo.1962) (holding that a highway did not violate a covenant which provided that " 'no ... building on any residence lot shall be used directly or indirectly for business of any character,' " because the restriction applied to the use of the *buildings* not the lots themselves); *Keener v. Berry*, 442 S.W.2d 159, 160–61 (Mo.App.1969) (holding that where the owner of a subdivision lot had a residential street dedicated on his lot as a means of ingress and egress to six lots outside the subdivision there was no violation of a

restrictive covenant which stated that " 'no residence ... on any residence lot shall be used ... for business of any character or for any purpose other than that of an exclusive private residence' "); *Dierberg v. Wills*, 700 S.W.2d 461, 468 (Mo.App.1985) (holding that a covenant " 'not to erect any building intended for any purpose except a one family private residence' " does not prevent the use of the land as a parking lot because the restriction applies only to the type of building on the land).

strictions primarily ban the placement of "mobile homes or modular homes" on the lots in question, such that "the restriction clearly is focused on the type of structure to be put on the land and does not prohibit the use of the land as a street." *City of Genevieve,* 765 S.W.2d at 366.

The unambiguous language of the deed's restrictions do not prohibit Ms. Webber from constructing the Road for her family's private use on her private property. Points II and III are denied. We affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

RAHMEYER, J., and LYNCH, C.J., concur.