Timothy R. JONES, M.D., A. Charles Hiemenz, III, and Paul D. Chesterton, in their capacities As Trustees of the Berkley Lane Association, as unincorporated association, Plaintiffs/Respondents,

v.

Jeffrey J. LADRIERE, Defendant/Appellant.

No. ED 81261.

Missouri Court of Appeals, Eastern District, Division Three.

June 17, 2003.

J. Vincent Keady, Jr., Clayton, MO, for appellant.

Frank Susman, St. Louis, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Jeffrey Ladriere ("Lot Owner") appeals the declaratory judgment entered in favor of the trustees of the Berkley Lane Association ("Association") in a case submitted to the court on stipulated facts. The judgment declares that construction of a residence on the lot owned by Lot Owner is prohibited by the terms of an Agreement of the Berkley Lane Association ("Agreement"), as amended. We reverse and remand.

Association is comprised of the owners of all properties comprising (*i.e.*, abutting) Berkley Lane in the City of Ladue. Berkley Lane is not a subdivision *per se*. The properties involved were originally platted as parts of different subdivisions. The Agreement is essentially a mutual covenant signed and recorded in 1971 by all of the owners of properties fronting on Berkley Lane for the purposes of (1) providing for the improvement and maintenance of the road known as Berkley Lane and the Ladue Road entrance thereto; and (2) to maintain the general appearance and value of their tracts as desirable residential property. At the time the 1971 Agreement was adopted, 23 residences had been built and all of the owners of those residences signed the Agreement. Those same residences are still the only homes on Berkley Lane today.

At the time the Agreement was signed, Lot Owner's parents owned a residence with the address of 25 Berkley Lane situated on lot 10 and part of lot 9 as platted in Block 2 of Falzones Subdivision. They also owned the adjacent lot 11 on the same plat, which was vacant. In 1994, Lot Owner purchased lot 11 from his mother and Association was notified of his intention to construct a residence thereon. Although Association took the position that such construction of a new residence was prohibited by the Agreement, it accepted dues payments from Lot Owner for the fiscal years 1996/97 and 1997/98. Lot Owner proceeded to have plans drawn up for the new residence and to seek approval from the City of Ladue.

In October 2000, the owners of a large majority of the existing Berkley Lane residences signed a purported amendment to the Agreement, Amendment No. 4, adding a new Article VIII to the Agreement. The apparent purpose of Amendment No. 4 was to rectify a glaring defect in the Agreement, which is poorly drafted. The terms "property," "properties," "lot," and "lots" are used throughout the Agreement without further definition. For example, the Agreement defines a quorum for the transaction of business to be the owners of over fifty percent of the "properties." However, the Agreement further provides: "The voting at the meeting of property owners shall be by ownership of lots, and each lot shall be entitled to one vote." Assessments are to be collected from "each property owner." Improvements are to be authorized at a special meeting by a vote of "two-thirds of the property owners present." Among the restrictions set forth in Article Six of the Agreement is the following:

(k) No lot shall be used except for residential purposes. No building shall be created, altered, placed or permitted to remain on any lot other than one detached single family dwelling and a private attached garage.

In an apparent attempt to rectify the enigma resulting from the Agreement's indiscriminate use of the terms "property," "properties," "lot," and "lots," Amendment No. 4 provides:

ARTICLE VIII

Whenever the terms "property," "properties," "lot" and/or "lots" are used in said Agreement, including but in no manner limited to the use of the word "lot" in Article Six (k), said terms shall be defined, are intended to mean and shall be interpreted and construed as the parcel(s) of ground, known and numbered by the postal, residential address(es) 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and/or 25, of said Berkley Lane, including each and all adjoining parcel(s) of ground, improved or unimproved, then owned or previously owned by the current or prior owners of said residential address(es), regardless of any subdividing, partition, assignment, conveyance, sale or lease of any portion of said parcel(s) of ground as herein defined by residential address.

In April 2001, the trustees filed their petition for declaratory and injunctive relief seeking to prohibit Lot Owner from constructing a residence on his property. Association took the position that Article Six of the Agreement set forth above limits construction of a single-family dwelling to those parcels of property identified by a residential address. Alternatively, Association contended that construction is so limited by that interpretation of Article Six (k) as required by Article VIII adopted in Amendment No. 4.

The trial court held that the word "lot" as used in the Agreement is not ambiguous. The trial court found that a "lot," as commonly understood, is a parcel of real property, which is typically described by reference to lot and block numbers in legal documents, including restrictive covenants, and on recorded plats and maps. The trial court rejected Association's contention that Article Six (k) of the Agreement limited construction to those parcels of property identified by a residential address. The trial court pointed out that such interpretation would mean that the Agreement, when adopted in 1971, would have foreclosed future construction of residences. Yet the Agreement when read as a whole anticipates and plans for future construction, including the construction of future residences. However, the trial court further found that Amendment No. 4 to the Agreement is valid and enforceable. In view of this finding, the trial court found that construction of a residence on Lot Owner's lot would violate the Agreement and Amendment No. 4. Accordingly, Lot Owner was enjoined from constructing a residence on his lot.

Before turning to the merits of Lot Owner's appeal, we will first address Association's extensive briefing of the issue of whether the original Agreement prohibited construction of a residence on Lot Owner's lot. Association draws our attention to extrinsic evidence of how the members of the Association conducted their affairs in an apparent effort to persuade us that the trial court was wrong in its construction and interpretation of the term "lot" as used in Article Six (k) and that the original agreement actually prohibited construction except on property identified by a Berkley Lane postal address. Association, however, did not appeal the trial court's judgment flatly rejecting this contention. Thus, for purposes of this appeal, the trial

court's interpretation of the original Agreement is conclusive and binding on the parties. Although it did not exactly say so in so many words, the only logical interpretation of the trial court's judgment is that Lot Owner's proposed construction would not have been prohibited by Article Six (k) or any other provision of the original Agreement. However, such construction is barred by the Agreement as modified by Amendment No. 4. The propriety of that holding is the issue before us.

■ In his first point, Lot Owner contends that the trial court erred in finding Amendment No. 4 to be enforceable because it improperly adds new burdens to the Agreement.[1] Lot Owner points out that restrictive covenants upon land are to be strictly construed. *Van Deusen v. Ruth*, 343 Mo. 1096, 125 S.W.2d 1, 3 (1938). "Restrictions, being in derogation of the fee conveyed, will not be extended by implication to include anything not clearly expressed." *Gardner v. Maffitt*, 335 Mo. 959, 74 S.W.2d 604, 607 (1934). In *Van Deusen*, the Missouri Supreme Court considered the enforceability of an amendment to a restrictive covenant. 125 S.W.2d at 2. The original covenant permitted the construction of apartments or commercial buildings on Hanley Road. *Id.* The amendment prohibited such construction. *Id.* Proponents of the amendment relied on the following provision:

> All or any of the foregoing provisions or restrictions may be modified, amended, released or extinguished at any time after ten (10) years by written instrument executed, acknowledged and recorded as required by law for instruments affecting real estate, by the owners of seventy-five per cent (75%) of the total number of front feet embraced in this indenture, and for this purpose the frontage shall be determined as set forth in Paragraph Second of this instrument, provided, however, that the Company, its successors or assigns promoting this subdivision, or its or their assigns who shall not be bona fide purchasers of lots therein, shall not be privileged to join in such written instrument.

*Id.* The Missouri Supreme Court held that the intention of such language was to permit the existing restrictions to be alleviated *i.e.*, to be made less harsh or extinguished altogether. *Id.* According to the court, it would require a strained construction to hold that the clause authorized any new and additional burdens to be added. *Id.* To construe the clause to authorize new restrictions on the subdivision would constitute a liberal construction contrary to the principle that restrictive covenants must be strictly construed. *Id.* at 3.[2]

Similarly, the Agreement in this case provides:

> This Agreement and any part thereof may be altered, amended, changed or revoked by a written agreement signed by not less than two-thirds(2/3) of the then record owners of the fee simple

---

1. Contrary to Association's contention in its brief, this issue was squarely before the trial court by reason of Lot Owner's denial of Association's assertion in its petition that the Agreement, as amended, prohibits construction of a residence. *In re Estate of Sample v. Travelers Indem. Co.*, 492 S.W.2d 829, 833 (Mo. banc 1973).

2. It is true, as Association points out in its brief, that the court in *Van Deusen* also agreed with the trial court that the modification was invalid because the successor to the original realty company was improperly permitted to vote for the modification. 125 S.W.2d at 3, 4. However, when a court bases its decision on two distinct grounds, each is as authoritative as the other and neither is obiter dictum. *City of St. Louis v. Riverside Waste Management, L.L.C.*, 73 S.W.3d 794, 806 n. 5 (Mo.App.2002).

title of all lots on Berkley Lane and such written and signed alteration, amendment, change or revocation shall, when duly certified and acknowledged by the then Trustees and recorded with the Office of the Recorder of Deeds for St. Louis County, Missouri, become a part of the provisions and restrictions of this Agreement.

As in *Van Deusen*, we find nothing in this language that purports to give Association members the power to add new burdens or restrictions not found in the original Agreement by a two-thirds vote. Contrary to Association's contentions, Amendment No. 4 does represent a new burden or restriction on Lot Owner. As construed by the trial court, Lot Owner was authorized to construct a residence on his lot under the terms of the original agreement. Amendment No. 4 would prohibit such construction. We hold that Amendment No. 4 is invalid to the extent that it prohibits Lot Owner from constructing a residence on his lot.[3] Accordingly, we reverse the judgment and remand for entry of a new judgment consistent with this opinion. In view of this holding, we need not address Lot Owner's remaining contentions on appeal.

MARY R. RUSSELL, P.J., and CLIFFORD H. AHRENS, J., Concur.

---

3. Nothing is this opinion should be construed as in any way adjudicating the enforceability of the Agreement generally or any other amendments. We note, however, that Lot Owner has raised a serious question as to whether Amendment No. 4 has been properly acknowledged. Moreover, wholly aside from the Agreement's indiscriminate use of the terms "property" and "lot," we note that neither the Agreement nor any amendment in the record contains any legal description of the property or properties subject to the Agreement.