**William M. HAZELBAKER,
Plaintiff/Respondent/Cross–
Appellant,**

v.

**COUNTY OF ST. CHARLES,
Defendant/Cross–
Respondent,**

**and**

**Highland Trails Community
Association, Defendant/Appellant.**

**Nos. ED 89060, ED 89061.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 16, 2007.

Steve Koslovsky, St. Louis, MO, attorney for defendant/appellant Highland Trails Community Association.

Lawrence D. Mass, St. Louis, MO, attorney for plaintiff/respondent/cross-appellant William Hazelbaker.

Harold A. Ellis, St. Charles, MO, attorney for defendant/cross-respondent County of St. Charles.

### Introduction

KENNETH M. ROMINES, Judge.

This case involves a subdivision's attempt to amend its covenants and restrictions to prohibit owners from subdividing their lots. Highland Trails Community Association appeals the declaratory judgment and injunction issued by the Circuit Court of St. Charles County, the Honorable Lucy D. Rauch presiding, in favor of Mr. William M. Hazelbaker, who owns Lot 41 of the Highland Trails subdivision. The trial court invalidated the Association's amendment because it added a burden to ownership and was not passed unanimously. We affirm.[1]

---

1. Mr. Hazelbaker also filed a cross-appeal against the County of St. Charles. He argues that the County had no discretion to deny his application to subdivide his lot because even if the Amendment was valid, the County had not adopted it and thus it was not incorporated into the County's zoning requirements. We do not reach this issue because we affirm the trial court's finding that the Amendment was invalid. Accordingly, we dismiss the cross-appeal as moot.

### Factual and Procedural Background

Highland Trails is a subdivision made up of two plats of land containing 66 lots. Plat One contains 39 lots (numbered Lots 1 through 39), ranging in size from 1.1 acres to 3.8 acres. Plat Two contains the remaining 27 lots (numbered Lots 40 through 66), which are all more than 3 acres in size. The Highland Trails Community Association (Association) consists of the owners of the lots, and it is overseen by three elected Trustees who administer and enforce the Declaration of Covenants and Restrictions of Highland Trails (Restrictions). The Restrictions were recorded in 1978, and they originally contained provisions concerning the use of each lot. One stated that "[n]one of said Lots may be improved, used[,] or occupied for other than private residence purposes.... Any residence erected or maintained on any of said Lots shall be designed for occupancy by a single family." The Restrictions further provided that "... members shall be entitled to one vote for each Lot in which they hold [an] interest ... but in no event shall more than one vote be cast with respect to any such Lot." The Restrictions stated they would remain in force "unless an instrument signed by the then Owners of 51% of the Lots has been recorded, agreeing to change said covenants and restrictions in whole or in part." St. Charles County's (County) zoning ordinances in force for the subdivision mandate that each lot must be at least one acre in size.

Before the year 2000, no Highland Trails owner ever attempted to subdivide his Lot. In 2000, the owners of Lots 40 and 65 divided each of their Lots into two new lots that were each over an acre in size so as to comply with the County's zoning ordinance. In 2001, the Association responded by circulating an "Amendment To Declaration Of Covenants And Restrictions For Highland Trails" (Amendment). The Amendment, in relevant part, stated:

No Lot located within Highland Trails Plats One and Two shall be split or subdivided, with the exception of Lot 65 which has previously been split by its owner with the approval of the Board of Directors.

Because the Restrictions called for only one vote per Lot, there were 66 possible votes for the Amendment. 60 owners voted in favor of the Amendment, 4 voted against, and 2 abstained. Among the votes cast for the Amendment was that of Ms. Mary A. Ellis, who owned Lot 41 at the time. The Trustee then recorded the Amendment on 12 January 2001.

In May 2005, Mr. Hazelbaker acquired title to Lot 41 from Ms. Ellis. Shortly thereafter he mailed a proposed subdivision plan to the Trustees of the Association. He also applied to the County's Planning and Zoning Commission for approval of a subdivision plat to divide Lot 41, which the Commission denied. Mr. Hazelbaker appealed to the County Council, which affirmed the decision of the Commission. Then Mr. Hazelbaker filed for declaratory judgment and injunction against both the County and the Association, asking the court to find the Amendment invalid. The court found that the original Restrictions did not prohibit subdivision of Lots, and that the 2001 Amendment was invalid because it was not approved by all of the owners. The court also granted Mr. Hazelbaker's injunction and ordered the County to approve Mr. Hazelbaker's application to divide his Lot. This appeal by the Association followed.

The Association raises two points on appeal. First, the Association argues that the circuit court should not have granted declaratory judgment because the language of the original Restrictions prohibited subdividing Lots even before amended.

Second, the Association argues that the Amendment was valid upon all owners who agreed to it, regardless of its validity upon the owners who did not. Thus, the Association concludes, because Mr. Hazelbaker's predecessor in title agreed to the Amendment, Mr. Hazelbaker was bound by it.

### Standard of Review

■ According to Missouri Supreme Court Rule 87.11, we review a trial court's declaratory judgment under the same standard as other orders, decrees, and judgments. Therefore, our review in this case is governed by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32.

### Discussion

#### The Original Restrictions

■ The Association's first point on appeal is that the original Declaration of Restrictions and Covenants recorded in 1978 implicitly prohibited the subdivision of any of the Lots in Highland Trails. The Association points to the definition of "Lots" in the Restrictions, which states: " 'Lot' shall mean and refer to any plot of land shown upon any recorded subdivision map of The Properties with the exception of Common Properties...." "The Properties" is defined to "refer to all such existing properties and additions thereto, as are subject to this Declaration." The

Association argues that this language means that the term "Lot" can only refer to the existing 66 Lots, and that the "additions" mentioned in the "Properties" definition refers to additional Plats that may be added to the subdivision, in the same way Plat Two was added. Then the Association applies the Restrictions' limitation on each Lot to a "single family residence." It argues this means that if a Lot was subdivided, the result would be two residences on a single Lot, and would thus violate the Restrictions.

We disagree. The Restrictions contain no implicit limitation on the subdivision of Lots. The act of subdividing Lots can just as easily be seen as creating two new Lots from one, and the limitation of one residence on each of those Lots may still be followed to the letter. We also do not agree with the Association's interpretation of the definition of "Properties." It includes "all such existing *properties* " (emphasis added), *not* all such existing *Lots*. The definition of "Lots" simply refers to any recorded subdivision map. Conceivably, the Association could completely restructure the Properties and re-divide them into new Lots (provided all other procedural requirements were followed to do so), and the definitions would still fit. Furthermore, as the Association conceded in oral argument, and the Restrictions plainly show, there is no provision that expressly prohibits the subdivision of Lots. Therefore, we are unpersuaded by the Association's argument that the Restrictions may be read to prohibit subdividing Lots.[2] Point denied.

---

**2.** We also note the Association's concern that allowing subdivision of lots for those in Plat Two would dilute the votes of owners in Plat One, who cannot divide their lots and still be in compliance with the zoning ordinance. The Association argues that this means subdivision of lots was not contemplated by the

Restrictions and would frustrate the voting process. This does not amount to a prohibition on subdividing lots, nor do the Restrictions indicate an intention to limit the number of votes to the number and proportion between the two Plats that existed in 1978.

## The Amendment

■ Restrictive covenants may be amended at any time with unanimous consent, if there is no contrary contractual provision. *Steve Vogli & Co. v. Lane,* 405 S.W.2d 885, 888 (Mo.1966); *Bumm v. Olde Ivy Development, LLC,* 142 S.W.3d 895, 903 (Mo.Ct.App.S.D.2004); *Pearce v. Scarcello,* 920 S.W.2d 643, 645 n. 3 (Mo.Ct.App. S.D.1996). However, we now face the question of whether an amendment creating new burdens on the owners can be valid without unanimous consent. We agree with Mr. Hazelbaker that the amendment at issue here—a prohibition on subdividing Lots—does place an additional burden on the owners in Highland Trails. Therefore, our analysis of this question hinges on whether the amendment procedure prescribed in the Restrictions covers amendments which impose an additional burden to ownership. *See Van Deusen v. Ruth,* 343 Mo. 1096, 125 S.W.2d 1 (1938) (looking to language of amendment procedure to determine whether it encompasses adding a new burden on ownership). *Accord Bumm v. Olde Ivy Development, LLC,* 142 S.W.3d 895 (Mo.Ct.App.S.D. 2004); *Webb v. Mullikin,* 142 S.W.3d 822 (Mo.Ct.App.E.D.2004); *Jones v. Ladriere,* 108 S.W.3d 736 (Mo.Ct.App.E.D.2003).

Our precedents on this issue all deal with procedures containing slightly different language. In *Van Deusen,* the restrictions could be "modified, amended, released, or extinguished" by a 75% majority vote. 125 S.W.2d at 2. In *Jones,* the restrictions provided that they could be "altered, amended, changed, or revoked" by a two-thirds majority. 108 S.W.3d at 739. In *Webb,* the relevant language was "altered or amended all or in part" by differing majorities depending on who proposed the amendment. 142 S.W.3d at 823–24. Finally, in *Olde Ivy,* the restrictions stated they could be "amended, repealed or add-

ed to ... by the owners of a majority of the lots...." 142 S.W.3d at 904. In all of these cases, the courts determined that the associations' amendment procedures did not apply to situations in which the associations attempted to impose an additional burden on ownership. *Van Deusen,* 125 S.W.2d at 2–3 (amendment prohibiting the erection of apartments or commercial buildings on certain streets of subdivision); *Jones,* 108 S.W.3d at 740 (amendment specifically prohibiting owner from constructing residence on vacant lot); *Webb,* 142 S.W.3d at 827 (amendment adding assessments on owners for maintenance of tennis club situated in between portions of subdivision but not owned by subdivision association); *Olde Ivy,* 142 S.W.3d at 904 (strictly construing the language, stating that even "added to" means only that owners may "supplement existing covenants" by majority vote but may not add new burdens under that provision; finding amendment prohibiting replatting of lots to be a burden).

■ Here, the Restrictions state that a majority of the Lots may "agree[ ] to *change* said covenants and restrictions in whole or in part" (emphasis added). We find this to be similar to the language at issue in the above cases. As such, this provision does not give owners the power to add new burdens to the Restrictions by majority vote, rather it merely authorizes changes to existing burdens by majority. Because a new prohibition on subdividing Lots is a burden on ownership, the Restrictions' prescribed amendment procedure does not cover it.

Acknowledging this, the Association argues that although the above-cited cases found the amendments at issue could not be enforced despite passage by the prescribed majorities because they lacked unanimity, it does not follow that the amendments could not be applied and en-

forced against those who voted for them. The Association argues this is because those cases were all initiated by owners who had voted *against* the amendments, and that is why the courts would not enforce the amendments against those owners. The Association urges that the decisions binding on this Court—namely, *Van Deusen, Jones,* and *Webb*—never expressly held that unanimous consent was required to make the amendments valid against owners who voted *for* them. Thus, it argues, we should extract the principle that such burden-imposing amendments can still be valid for the owners who agreed to them and for their successors in title. The Association acknowledges that the *Olde Ivy* case from the Southern District did find that unanimity was required but argues that this is an improper extension of the other precedents. The Association maintains that Hazelbaker should be bound because his predecessor signed the Amendment.

The Association cites no constitutional provision, statute, or case that so finds. While its characterization of our precedents' holdings is correct, we cannot agree with the Association's logic in applying those holdings. Rather, it is more logical that an amendment to an association's by-laws is either valid or invalid. It is not both.[3] The Southern District has adopted that position in *Olde Ivy,* and we do now as well. Because we hold that the Restrictions' amendment procedure does not

encompass the imposition of additional burdens, such an amendment required unanimous consent. As an amendment must either by valid for all or invalid for all; lacking such unanimity, the Amendment is wholly invalid. Thus, even though Hazelbaker's predecessor in title approved the Amendment, Hazelbaker is not bound to its terms. Point denied.

### Conclusion

If the amendment procedures contained in a homeowners' association's covenants and restrictions do not contemplate the addition of burdens on ownership, then an amendment which adds a burden is not valid in any respect without unanimous consent. Here, the Amendment added a burden because it prohibited the owners from subdividing their Lots, a prohibition which was not contained in the Association's Restrictions. Therefore, the Amendment was altogether invalid, despite the fact that Mr. Hazelbaker's predecessor assented to it. The circuit court properly entered declaratory judgment and issued the injunction in favor of Mr. Hazelbaker.

AFFIRMED; CROSS–APPEAL DISMISSED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.

---

**3.** This conclusion also comports with the logic of similar case law in this area, namely, *Saladin v. Jennings,* 111 S.W.3d 435 (Mo. Ct.App.E.D.2003). In *Saladin,* the amendment at issue did not contain the addition of a burden but the release of a restriction, and it was therefore validly passed through the prescribed amendment procedure. However, part of the amendment did not uniformly affect all of the property owners in the subdivision, and this Court found that portion invalid. *Id.* at 444 ("Property rights and obligations which arise as covenants imposed by subdivision restrictions may be changed by less than all property owners only if the changes are uniformly applied to all affected property owners."). The result in this case of applying the Association's logic would similarly have a non-uniform effect on Highland Trails property owners. Although the amendment in *Saladin* was not burden-imposing, the case shows that a different result here allowing for non-uniform application would be anomalous.