### Troy HARRIS and Libby Harris, Plaintiffs–Appellants,

v.

### Jon E. SMITH and Teresa J. Smith, and Dennis Thompson, and H.J.C. Enterprises, L.C., d/b/a Murney Associates, Realtors, Defendants–Respondents.

No. 28300.

Missouri Court of Appeals,
Southern District,
Division One.

April 28, 2008.

---

---

Timothy Davis Richardson of Springfield, MO, for Plaintiffs–Appellants.

Jack Hoke of Springfield, MO, for Respondent Smith.

Stephen Howard Snead of Springfield, MO, for Respondents Thompson and HJC Enterprises d/b/a Murney.

JEFFREY W. BATES, Judge.

Troy and Libby Harris (the Harrises) appeal from a summary judgment granted in favor of Jon and Teresa Smith (the Smiths), Dennis Thompson (Thompson), and HJC Enterprises, L.C., d/b/a Murney Associates Realtors (Murney). The Harrises' lawsuit alleged that they wanted to build a shop building on real estate they purchased from the Smiths and that all of the defendants had made misrepresentations concerning restrictive covenants that

prohibited such construction. All of the defendants filed motions for summary judgment, which were granted by the trial court. The Harrises contend that there are genuine issues of material fact that require a trial. This Court affirms.

## I. Standard of Review

If the summary judgment motion, response, reply and sur-reply show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, a trial court is required to enter summary judgment in favor of the moving party. Rule 74.04(c)(6).[1] On appeal, this Court employs a *de novo* standard of review that involves no deference to the ruling below. *City of Springfield v. Gee,* 149 S.W.3d 609, 612 (Mo.App.2004); *Murphy v. Jackson Nat'l Life Ins. Co.,* 83 S.W.3d 663, 665 (Mo.App.2002). We use the same criteria the trial court should have employed in initially deciding whether to grant a party's motion. *Stormer v. Richfield Hospitality Services, Inc.,* 60 S.W.3d 10, 12 (Mo. App.2001). The record is viewed in the light most favorable to the party against whom judgment was entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the record. *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law." *Id.*

As *ITT* explains, Rule 74.04 distinguishes between motions for summary judgment filed by a "claimant" and by a "defending party." *Id.* at 380. Here, the Smiths, Thompson and Murney were the defending parties. A defending party "may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense." *Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.,* 155 S.W.3d 50, 58–59 (Mo. banc 2005).

## II. Factual and Procedural Background

In July 1959, E.F. and Katherine Corlett recorded a plat creating a subdivision in Greene County, Missouri, called Melville Acres. The subdivision consisted of 15 lots, all owned by the Corletts. They also recorded a document containing protective covenants for Melville Acres (the Covenants). Covenant No. 11 prohibited any outbuilding with an area greater than 600 square feet. Covenant No. 13 provided that the covenants were binding for 25 years after recording and would be automatically renewed for successive 10–year periods, "unless an instrument signed by a majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part."

In September 1991, David and Joyce Pfister owned lots 1–5 and 11–15 of Melville Acres. They recorded a set of declarations (the Declarations) applicable to those lots only. Pursuant to Article I, § 3(a) of the Declarations, additional property could become subject thereto by filing a "Supplementary Declaration" if 60% of the owners of lots 1–5 and 11–15 approved. This provision further authorized a supplementary declaration to "contain additions, deletions, and modifications from those contained in this Declaration as may be necessary to reflect the different character, if any, of the added properties." A

---

**1.** All references to rules are to Missouri Court Rules (2006).

supplementary declaration, however, could not effect any changes in the original Declarations "except as may be specifically permitted herein." In Article II, § 1(e), the Declarations stated that "[a]ll outbuildings should blend with the exterior décor of the residence to which they serve." In Article IV, § 2, the Declarations stated that "[a]fter the recording of this Declaration, the provisions hereof may be amended or terminated at any time by at least sixty percent (60%) of the total Lot Owners with each Lot carrying one vote, regardless of the number of owners."

In September 1996, the owners of lots 1–12 and 14 in Melville Acres voted to terminate the Covenants in conformity with the requirements contained therein. They recorded an instrument entitled "Agreement to Terminate Protective Covenants for Melville Acres." This document, bearing the signatures of the owners of 13 lots, stated that the Covenants were of "no further force and effect" and were "terminated for all purposes."

After the termination document was recorded, another document entitled "Supplementary Declaration to the Declaration of Covenants of Melville Acres, Greene County, Missouri" (the Supplement) was recorded. The Supplement recited that: (1) Fred and Marjorie Leader owned lots 6–10 of Melville Acres; (2) the Leaders wanted their property to be subject to the Declarations; and (3) the owners of lots 1–5, 11–12 and 14 in Melville Acres had voted to approve the addition of lots 6–10 to the property that was subject to the Declarations. Next, the Supplement purported to amend the Declarations in the following respect:

> Subparagraph (e) of Article II of Section 1 of said declarations which reads: "(e) All outbuildings shall blend with the exterior décor of the residence to which they serve" is hereby amended so that

the said subparagraph (e) shall read as follows: (e) After there is a single family residence on a lot, an outbuilding which shall blend with the exterior décor of the residence may be placed on the lot, but no lot shall have more than one such outbuilding, and no outbuilding shall have gross interior floor area of more than 200 square feet, and the outbuilding shall be located behind and within 100 feet of the single family residence on the lot.

The owners of lots 13 and 15 did not approve of this amendment.

In June 2004, the Smiths owned the south 50 feet of Lot 3 and the north 75 feet of Lot 4 in Melville Acres. They listed the property for sale through Carol Jones Realtors. The Harrises were in the market to purchase real estate, and they hired Thompson to represent them. He was an agent for Murney at the time. The Harrises told Thompson that they were looking for a property where they could build a garage for Troy Harris' cars. The Harrises intended to construct a shop building on the property with dimensions of 30 × 40 feet. They looked at the Smiths' property and signed a contract to purchase it in September 2004. After the closing, the Harrises were told by a neighbor in Melville Acres that they could not build a shop building on their property.

In May 2005, the Harrises sued the Smiths, Thompson and Murney. The petition alleged, *inter alia*, that: (1) the Harrises' ability to "build a shop building on the property" was one of their purchase requirements; (2) Thompson and the Smiths assured the Harrises that there would be no problems with building a shop building on the property; but (3) such construction was prohibited by the Supplement. The Harrises sought actual and punitive damages or, alternatively, rescission and restitution.

The Smiths initially filed a motion for summary judgment, in which Thompson and Murney joined, seeking dismissal of the Harrises' case on the legal ground that they had constructive notice of the Covenants, the Declarations and the Supplement because these documents had been recorded. Thereafter, Thompson and Murney filed a second motion for summary judgment. The legal basis for this motion was that the Harrises could construct the shop building they wanted because: (1) the new or additional burdens imposed on such construction by the Supplement were invalid because it was not adopted by unanimous consent; and (2) the Declarations did not restrict or prevent the Harrises from constructing a shop building on their property. In the Harrises' response to the statement of undisputed facts, they admitted that the Declarations did not "restrict or prevent Plaintiffs Harris from constructing a shop building on their property" because the building only had to blend with the exterior décor of the residence. It also was undisputed that the owners of Melville Acres lots 13 and 15 did not vote in favor of the amendment in the Supplement restricting the number, size and location of outbuildings on an owners' property. The court granted the first and second motions for summary judgment, and this appeal followed.

### III. Discussion and Decision

In the Harrises' second point on appeal, they argue that the trial court erred in granting the second motion for summary judgment filed by Thompson and Murney because there were genuine issues of material fact regarding these defendants' mis-representations, the applicability of the various covenants and restrictions to the property and their knowledge of the covenants and restrictions.[2]

The Harrises' lawsuit appears to have alleged theories of fraudulent and negligent misrepresentation against Thompson and Murney. The elements of fraudulent misrepresentation are: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury." *Crossland Constr. Co., Inc. v. Alpine Elec. Constr. Inc.*, 232 S.W.3d 590, 592–93 (Mo.App.2007). The elements of negligent misrepresentation are: "(1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) listener justifiably relied on the information; and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss." *Dueker v. Gill*, 175 S.W.3d 662, 669 (Mo.App.2005). A party's failure to prove any one of the elements of fraudulent misrepresentation is fatal to a claim dependent upon that theory. *CAD-*

2. The Harrises did not appeal from the judgment in favor of the Smiths, so they were dismissed from this appeal. In the Harrises' first point on appeal, they argue that the trial court erred in granting summary judgment to Thompson and Murney on the ground set forth in the Smiths' motion. Because the court properly granted summary judgment to Thompson and Murney based upon the independent ground set forth in the second motion, it is unnecessary for us to address the Harrises' first point on appeal.

*CO, Inc. v. Fleetwood Enterprises, Inc.,* 220 S.W.3d 426, 436 (Mo.App.2007). The same is true for negligent misrepresentation. *Sheppard v. East,* 192 S.W.3d 518, 523 (Mo.App.2006).

■ The fraudulent and negligent misrepresentation theories asserted against Thompson and Murney were based upon the premise that the Supplement prohibited the Harrises from constructing a 30 × 40 shop building on their property. In the second motion for summary judgment, Thompson and Murney challenged the legal validity of the new restrictions on outbuildings contained in the Supplement. If these restrictions were invalid, then the Harrises' claim would fail for lack of a false statement or any damages proximately caused by the Harrises' reliance thereon. Consequently, Thompson and Murney would be entitled to summary judgment for negating these two elements of the Harrises' claim. *See Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.,* 155 S.W.3d 50, 58–59 (Mo. banc 2005).[3]

In the Declarations, the only restriction on outbuildings was that they had to blend with the exterior décor of the residence which they served. The Supplement retained this requirement, but the amendment contained therein also limited owners to: (1) one outbuilding; (2) with a floor area of no more than 200 square feet; (3) located behind; and (4) no more than 100 feet from the residence. Thus, the Supplement added four new burdens or restrictions on outbuildings. This amendment was not unanimously approved because the owners of lots 13 and 15 did not vote in favor of it.

The Declarations authorized its provisions to be "amended or terminated" by a 60% vote of the total lot owners. In *Van Deusen v. Ruth,* 343 Mo. 1096, 125 S.W.2d 1 (1938), the subdivision restrictions stated that they could be "modified, amended, released or extinguished" by a vote of the owners of 75% of the subdivision's frontage. *Id.* at 2. Our Supreme Court held that such amendatory language was intended to permit existing restrictions to be alleviated or extinguished, but it did not authorize new and additional restrictions and burdens to be added. *Id.* An amendment prohibiting the erection of apartments or commercial buildings on the affected properties was held to be invalid. *Id.* at 2–3.

In *Jones v. Ladriere,* 108 S.W.3d 736 (Mo.App.2003), a majority of the property owners passed a new restriction prohibiting construction of a building on one owner's lot. *Id.* at 737–38. The subdivision restrictions provided that they could be

---

**3.** The Harrises argue that Thompson and Murney have no legal standing to challenge the invalidity of the Supplement in this lawsuit. The only authority cited by the Harrises to support this novel argument is *Sequa Corporation v. Cooper,* 128 S.W.3d 69 (Mo.App. 2003), which held that a shareholder of a corporation has no standing to sue in his individual capacity for damages to the corporation. *Id.* at 75–76. That principle of law has no application here. The Harrises are the ones who alleged in their petition that the Supplement prohibited them from constructing the shop building they wanted on their property. As plaintiffs, it was their burden to prove that allegation. *Kempton v. Dugan,* 224 S.W.3d 83, 87–88 (Mo.App.2007); *Springdale Gardens, Inc. v. Countryland Development, Inc.,* 638 S.W.2d 813, 815–16 (Mo.App.1982). As defendants in this lawsuit, Thompson and Murney had the right to marshal law and facts proving the invalidity of the Supplement in order to negate an element of the Harrises' claim. *See Day Advertising Inc. v. Devries And Associates, P.C.,* 217 S.W.3d 362, 366–67 (Mo. App.2007) (in legal malpractice action, lawyers were entitled to prove that underlying liquidated damages clause, in a contract between the plaintiff and a third party, was unenforceable in order to negate an element of the plaintiff's case).

"altered, amended, changed or revoked" by a two-thirds vote. *Id.* at 739–40. Citing *Van Deusen*, the eastern district held that such amendatory language did not give property owners "the power to add new burdens or restrictions not found in the original Agreement by a two-thirds vote." *Id.* at 740. Therefore, the newly-adopted restriction was invalid. *Id.*

In *Webb v. Mullikin*, 142 S.W.3d 822 (Mo.App.2004), the subdivision restrictions could be "amended all or in part at any time by a majority of the lot owners." *Id.* at 823. An amendment adding new yearly and special monetary assessments for club maintenance, which was approved by majority vote only, was challenged by several owners. Citing *Van Deusen* and *Jones,* the eastern district held that the amendatory language in the restrictions did not authorize the imposition of new burdens on lot owners by majority vote. *Id.* at 827.

In *Bumm v. Olde Ivy Development, LLC*, 142 S.W.3d 895 (Mo.App.2004), the covenants stated that they could be "amended, repealed or added to" by a majority of the lot owners. *Id.* at 904. A covenant adding a new burden on lot owners, which was approved by majority vote only, was challenged by an affected owner. This Court held that: (1) absent a contractual provision to the contrary, a restrictive covenant can be amended by unanimous consent of all lot owners; but (2) "a new restrictive covenant, adopted by majority vote only, is invalid and unenforceable if it imposes new burdens upon the affected property owners." *Id.* at 903. Because the amendatory language did not authorize the addition of new burdens on property owners by majority vote only, it was invalid and unenforceable. *Id.* at 904–05.

In *Hazelbaker v. County of St. Charles*, 235 S.W.3d 598 (Mo.App.2007), the restrictions stated that they could be changed in whole or in part by the agreement of a majority of lot owners. *Id.* at 602. A restriction prohibiting the subdivision of lots was adopted by majority vote. As the amendatory language in the restrictions did not permit the imposition of additional burdens by majority vote, the eastern district held that the new restriction was invalid for lack of unanimous consent. *Id.* at 603. The restriction was wholly invalid and did not even apply to the property owners who had voted in favor of it. *Id.*

The amendatory language in the Declarations is substantially the same as that discussed in *Van Deusen, Jones, Webb, Bumm* and *Hazelbaker*. Applying the principles articulated in these precedents to the case at bar, this Court holds that the new restrictions on outbuildings contained in the Supplement are invalid.

A *de novo* review of the record reveals no genuine issues of material fact that require a trial, and the defendants have established their entitlement to judgment as a matter of law by negating two elements of each theory of recovery asserted against them. Therefore, the trial court properly granted the second motion for summary judgment. Point II is denied, and the trial court's judgment is affirmed.

PARRISH, P.J., and SCOTT, J., Concur.