Sheila WYATT, Plaintiff–Respondent,

v.

TANEY COUNTY, MISSOURI, et al., Defendants–Appellant.

No. SD 29666.

Missouri Court of Appeals, Southern District, Division One.

July 28, 2011.

Motion for Rehearing or Reconsideration and Transfer Denied Aug. 19, 2011.

Application for Transfer Denied Oct. 4, 2011.

Patricia Keck, Springfield, MO, for Appellant.

Thomas R. Schwarz, Jr., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Presiding Judge.

Sheila Wyatt (Wyatt) was elected Taney County Collector in November 1998. She took office on March 1, 1999. She was re-elected in November 2006 for a term commencing on March 5, 2007. From 1996 through 2006, Wyatt was paid $65,525 for her annual salary as Collector. Beginning in January 2007, Wyatt's salary was reduced to $53,420.84 pursuant to a decision made by the Taney County Salary Commission (Salary Commission) in 2005.

Wyatt filed an eight-count petition against Taney County (the County) and others seeking a declaratory judgment

that she was "entitled to receive compensation at the rate of $65,525.00 per annum" and back pay from the County for the time period of January 2007 to entry of the judgment.

The County denied that Wyatt was entitled to a salary at the requested rate or back pay. The County also filed a counterclaim alleging that it had overpaid Wyatt from 1999 through 2006 because the amount she actually received for her salary was in excess of what Missouri law allowed. The County requested that Wyatt return these overpayments, which were calculated by the County to be between $156,725 and $164,725.

Both parties filed a motion for summary judgment. The trial court granted Wyatt's motion for summary judgment. The trial court decided Wyatt was entitled to a salary of $65,525 per year and back pay from the County for the time period of January 2007 through the entry of judgment. The trial court denied the County's motion for summary judgment and determined that the issues raised by the County's counterclaim were moot. The County appealed.

## I. Standard of Review

A summary judgment can be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Rule 74.04(c)(6).[1] Appellate review is *de novo. Wilson v. Rhodes,* 258 S.W.3d 873, 875 (Mo.App.2008). This Court uses the same criteria the trial court should have used in initially deciding whether to grant Wyatt's motion. *Harris v. Smith,* 250 S.W.3d 804, 806 (Mo.App.2008). "The propriety of summary judgment is purely an issue of law." *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

## II. Discussion and Decision

■ The County contends the trial court misapplied the law when it entered a judgment declaring Wyatt's salary to be $65,525 per annum and awarding her back pay. The County argues that the Salary Commission had the authority to reduce Wyatt's salary once it was determined that she was being paid a salary that exceeded the maximum allowable compensation by law. We agree.

In 1987, the General Assembly enacted a statute requiring every nonchartered county to have a salary commission. § 50.333.1 RSMo Cum.Supp. (1987). The salary commission was required to determine the compensation to be paid to every county office holder in office on January 1, 1988. § 50.333.6 RSMo Cum.Supp. (1987). The salary commission could establish the compensation for each office at an amount not greater than that set by law as the maximum compensation. § 50.333.7 RSMo Cum.Supp. (1987).

Counties are classified into one of four groups based upon assessed valuation. § 48.020. A county collector's salary is determined by statute in accordance with the county's classification.

The salaries of collectors in third class and first class counties were set by § 52.269 and § 50.343, respectively. Prior to January 1, 2001, Taney County was a third class county. Since January 1, 2001, Taney County has been a first class county. Thus, prior to January 1, 2001, the Taney County Collector's salary was based on § 52.269. Since January 1, 2001, it was based on § 50.343.

We will now discuss several statutory changes to both § 52.269 and § 50.343 that provide important background information and help guide our analysis. Enacted in

1. All references to rules are to Missouri Court Rules (2009). All references to statutes are to RSMo Cum.Supp. (2007) unless otherwise specified.

1987, § 52.269 provided a schedule for the salary commission to use to determine a county collector's salary. 1987 Mo. Laws 412–13 (effective Jan. 1, 1988). This schedule was based on both the county's population and assessed valuation. *Id.* This statutory provision, however, did not expressly state what action the newly formed salary commission was to take if the county collector's salary was greater than the salary set forth in the newly enacted schedule. *Id.* To specifically address this situation, the General Assembly amended § 52.269 in 1988. 1988 Mo. Laws 394–96 (effective May 13, 1988). As revised, § 52.269.1 stated that a county collector was not to receive compensation less than what that position had received for the period of March 1, 1987 to February 29, 1988 (the 1987 Salary) unless two-thirds of all members of the salary commission voted for a lower salary. 1988 Mo. Laws 395. This protection was to continue until 1992. *Id.* The amended § 52.269 then set forth a procedure whereby the collector's salary would be reduced down to the maximum salary allowed by the schedule over a four-year period. *Id.*[2] In 1992, the collector would receive the maximum salary allowed pursuant to § 52.269, plus seventy-five percent of the difference between this maximum salary allowed and the 1987 Salary. *Id.* In 1993, the collector would receive the maximum salary allowed pursuant to § 52.269, plus fifty percent of the difference between this maximum salary allowed and the 1987 Salary. *Id.* In 1994, the collector would receive the maximum salary allowed pursuant to § 52.269, plus twenty-five percent of the difference between the maximum salary allowed pursuant to § 52.269 and the 1987 Salary. *Id.* Finally in 1995, the collector would receive the maximum salary allowed pursuant to

§ 52.269. *Id.; see* § 52.269.1(1)–(5) RSMo Cum.Supp. (1988).

Two subsequent amendments to § 52.269, however, kept this four-year reduction procedure from taking effect. In 1990, the General Assembly amended § 52.269 so that it provided for the same procedure described above, except its start date was moved four years farther out. Therefore, the procedures described for the years 1992, 1993, 1994 and 1995 were moved to the years 1996, 1997, 1998 and 1999, respectively. 1990 Mo. Laws 388–89; *see* § 52.269.1(2)–(5) RSMo Cum.Supp. (1990). Another revision occurred in 1993 when the General Assembly completely eliminated the four-year reduction procedure. 1993 Mo. Laws 319–20. The General Assembly did, however, keep the compensation safeguard for the 1987 Salary. *Id.* at 319; *see* § 52.269.1 RSMo Cum. Supp. (1993).

Another compensation safeguard was added in 1997 (the 1997 Salary), when the General Assembly added the following provision into § 52.269.1:

> The provisions of this section shall not permit or require a reduction in the amount of compensation being paid for the office of county collector on January 1, 1997, or less than the total compensation being received for the services rendered or performed for the period beginning March 1, 1987, and ending February 29, 1988.

1997 Mo. Laws 255–56; *see* § 52.269.1 RSMo Cum.Supp. (1997). In 1997, the General Assembly also added the following provision into § 50.343.1, which sets the collector's salary for first class counties: "[t]he provisions of this section shall not permit a reduction in the amount of compensation being paid on January 1, 1997,

---

**2.** We note that the collector's salary could be reduced below the amount provided in any given year by the statute if two-thirds of all members of the salary commission voted for such a reduction.

for any offices subject to this section on January 1, 1997." 1997 Mo. Laws 252–53; *see* § 50.343.1 RSMo Cum.Supp. (1997). The current versions of both statutes contain the same respective language. *See* § 52.269.1; § 50.343.1.

Wyatt contends the safeguard for the 1997 Salary makes her immune to a salary reduction below that level. Wyatt argues that the County's reduction of her salary "flies in the face of the statutory provisions." We disagree.

In 2005, the statutory salary protections in § 52.269 and § 50.343 were eliminated when the General Assembly enacted § 50.327, which states:

> Notwithstanding any other provisions of law to the contrary, the salary schedules contained in section 49.082, RSMo, sections 50.334 and 50.343, 51.281, RSMo, 51.282, RSMo, 52.269, RSMo, 53.082, RSMo, 53.083, RSMo, 54.261, RSMo, 54.320, RSMo, 55.091, RSMo, 56.265, RSMo, 57.317, RSMo, 58.095, RSMo, shall be set as a base schedule for those county officials, unless the current salary of such officials, as of August 28, 2005, is lower than the compensation provided under the salary schedules. Beginning August 28, 2005, the salary commission in all counties except charter counties in this state shall be responsible for the computation of salaries of all county officials; provided, however, that any percentage salary adjustments in a county shall be equal for all such officials in that county.

§ 50.327 RSMo Cum.Supp. (2005). In 2007, this section was amended again to state:

> Notwithstanding any other provisions of law to the contrary, the salary schedules contained in section 49.082, RSMo, sections 50.334 and 50.343, 51.281, RSMo, 51.282, RSMo, 52.269, RSMo, 53.082, RSMo, 53.083, RSMo, 54.261, RSMo, 54.320, RSMo, 55.091, RSMo, 56.265,

> RSMo, 57.317, RSMo, 58.095, RSMo, and 473.742, RSMo, shall be set as a base schedule for those county officials. Except when it is necessary to increase newly elected or reelected county officials' salaries, in accordance with section 13, article VII, Constitution of Missouri, to comply with the requirements of this section, the salary commission in all counties except charter counties in this state shall be responsible for the computation of salaries of all county officials; provided, however, that any percentage salary adjustments in a county shall be equal for all such officials in that county.

§ 50.327.

■ The dispositive issue here is the meaning of the phrase "base schedule" in § 50.327. "When construing statutes, this Court ascertains the intent of the legislature from the language used and gives effect to that intent." *State, Missouri Dept. of Social Services, Div. of Aging v. Brookside Nursing Center, Inc.,* 50 S.W.3d 273, 276 (Mo. banc 2001). We must also give the statute's language "its plain and ordinary meaning" and read the provisions not "in isolation but construed together and read in harmony with the entire act." *Id.* The phrase is neither defined nor used elsewhere in Missouri statutes. The 2005 version of § 50.327 stated that the statutory salaries in the listed sections "shall be set as a base schedule for those county officials, unless the current salary of such officials ... is lower than the compensation provided under the salary schedules." § 50.327 RSMo Cum.Supp. (2005). Based on the plain language used in the 2005 version of the statute, we conclude the legislature intended for a county official affected by § 50.327 to receive the lower of his statutory salary or his current salary. The use of the phrase "base schedule" was intended to mean that all county officials' salaries were set as of August 28, 2005 as

required by § 50.327. Thereafter, it became the Salary Commission's responsibility to make modifications to the county officials' salaries as a group, as provided in that same section.

The 2007 amendment made no change to the "base schedule" language, but the "current salary" provision was removed. In our view, this demonstrates that in 2007 the legislature intended for each county official to have his or her salary set at the statutory amount unless art. VII, § 13 required a higher figure.[3] Thereafter, it became the Salary Commission's responsibility to make modifications to the county officials' salaries as a group, as provided in that same section.

It is also important to note that the changes in salary mandated by § 50.327 in 2005 and 2007 were required to be made "[n]otwithstanding any other provisions of law to the contrary ..." In calculating the base schedule, § 50.327 also specifically states that only the "salary schedules" in the enumerated sections—which includes § 52.269 and § 50.343—are to be used. By using this language, the legislature clearly expressed its intent that § 50.327 override all provisions that would otherwise be applicable. *See Kidde America, Inc. v. Director of Revenue,* 242 S.W.3d 709, 712 (Mo. banc 2008). Thus, the amendments to § 50.327 expressly override the salary protections in § 50.343 and § 52.269. We presume that the General Assembly "in enacting a statute, intended to effect some change in existing law, otherwise the enactment would accomplish nothing and legislatures are not presumed to have intended a useless act." *State v. Ryan,* 813 S.W.2d 898, 901 (Mo.App.1991). Accordingly, we conclude that § 50.327 set Wyatt's salary as a first-class county collector at the amount stated in § 50.343.

■ Wyatt argues, however, that her salary remained at the same level because the Salary Commission's attempts to reduce her salary were invalid. The following additional facts are relevant to this issue.

As noted above, the legislature enacted a new statute mandating that the "salary schedule" in certain enumerated statutes be set as a "base schedule" for county officials. § 50.327. This statute also states that, once the base schedule is set, the salary commission shall be responsible for determining future salaries as long as the percentage adjustment up or down from the base schedule is equal for all affected county officials. The Salary Commission met three times in 2005: September 29th, November 16th and December 15th. The minutes from the meeting on November 16, 2005 state that the County counsel "gave his legal opinion that [new legislation] set the base salary for every Taney County elected office as of August 28, 2005 at 100% of the amount set forth in the applicable salary schedule for that office." The minutes also reflect that the County counsel "pointed out that the salaries of elected officials are not decreased during an official's term of office and that any decrease in salary for an office would not take effect until a new term of office." A motion was made "to pay 100% of the appropriate salary schedule for each office." The motion passed.

On December 15, 2005, the Salary Commission held another meeting. A motion was made "to amend the previous motion ... made in the last meeting in November to say nothing in this motion shall cause any officeholder's salary a reduction." The motion failed, and the meeting was adjourned. The Salary Commission included its certification report with the minutes of the December 15th meeting.

3. No party argues that the constitutional provision has any application to the case at bar.

Wyatt contends the Salary Commission's actions were invalid for three reasons. We will address each in turn.

### Was the December 15, 2005 meeting authorized?

Based on § 50.333.5, the trial court found that the "December 15, 2005, meeting was outside of the authorized time period, and therefore the actions taken were void." In relevant part, this statute states:

In every county, the salary commission shall meet at least once before November thirtieth of each odd-numbered year. The salary commission may meet as many times as it deems necessary and may meet after November thirtieth and prior to December fifteenth of any odd-numbered year if the commission has met at least once prior to November thirtieth of that year.

*Id.*[4]

As of November 16, 2005, the Salary Commission had passed a motion "to pay 100% of the appropriate salary schedule for each office." The Salary Commission met again on December 15th, but no effective action was taken. We agree with the trial court that the Salary Commission could not actually conduct business on December 15th because that would not comply with the express language in the statute that any such meeting had to occur "prior to" December 15th. *See* § 50.333.5. The Salary Commission, however, had already met on November 15th and taken action at that meeting. The attempt to change that prior decision at the December 15th meeting was meaningless both because the attempted change was not adopted, and the meeting itself was held in violation of the statute. Therefore, the

action taken at the November 15th meeting of the Salary Commission remained in effect and was not rendered void by the later meeting, as the trial court erroneously concluded. Even if the December 15th meeting was not permissible, it does not render void the action taken at the earlier meeting held in compliance with the statute.

### Was the greater percentage reduction of the collector's salary permissible?

■ The trial court found that it was impermissible to reduce Wyatt's salary by a greater percentage than the other county officers. The trial court relied on § 50.333.7 and § 50.333.8. Section 50.333.7 states in pertinent part:

If the salary commission votes to decrease the compensation, a vote of two-thirds or more of all the members of the salary commission shall be required before the salary or other compensation of any county office shall be decreased below the compensation being paid for the particular office on the date the salary commission votes, and all officers and offices shall receive the same percentage decrease.

*Id.* The trial court also stated, specifically focusing on the middle paragraph of § 50.333.8, that the "form language of this required report clearly confirms the legislative intent that the county salary commission act across-the-board in setting salaries. The departure of the Commission's report from the statutorily required form further demonstrates that its actions are not authorized by law."

The middle paragraph of § 50.333.8 provides the form language certifying the re-

---

4. Although § 50.333 has been amended several times since its enactment, subdivision 5 has remained unchanged since 1998 and was in effect in 2005. Similarly, subdivisions 7, 8 and 9, which will be further discussed herein, have remained unchanged since 1998 and likewise were in effect in 2005.

port of compensation and states in pertinent part:

> The salary commission for _____ County hereby certifies that it has met pursuant to law to establish compensation for county officers to be paid to such officers during the next term of office for the officers affected. The salary commission reports that there shall be (no increase in compensation) (an increase of _____ percent) (a decrease of _____ percent) (county officer's salaries set at _____ percent of the maximum allowable compensation).

*Id.* Consistent with our analysis above, we think that § 50.327 mandated that the salary schedules contained in the sections it mentioned are to be set as a maximum "[n]otwithstanding any other provisions of law to the contrary[.]" § 50.327. Therefore, the Salary Commission was required to issue a report that accounted for the changes mandated by § 50.327. We conclude that the Salary Commission's report conformed to these statutory provisions.

### *Did the Salary Commission's actions conform to the requirements of § 50.333.8 and § 50.333.9?*

The trial court also found that the Salary Commission failed to properly report its actions as required by § 50.333.8 and § 50.333.9. The minutes from the December 15th meeting contains the following certification:

> Attached hereto and incorporated as part of these minutes is the Certification of the Report of the compensation by Salary Commission to the Clerk of the Taney County Commission.
>
> I, Donna Neely, Taney County Clerk and Secretary of the Taney County Salary Commission, do hereby certify that the salary commission for Taney County has met pursuant to law to compute salaries for the effected county offices during the next term of office and that

the salary commission reports that the salaries for county officers be set at 100% percent [sic] of the salary schedules contained in Section 50.343, 56.265, 57.317 and 58.095 RSMo. for those county offices. Salaries shall be adjusted each year on the official's year of incumbency for any change in the last completed assessment that would affect the maximum allowable compensation for that office, and that the foregoing is a true and accurate account of the deliberations and actions of the Taney County Salary Commission held in Taney County, September 29, 2005, November 16, and December 15, 2005.

Section 50.333.9 states that:

> For the meeting in 1989 and every meeting thereafter, in the event a salary commission in any county fails, neglects or refuses to meet as provided in this section, or in the event a majority of the salary commission is unable to reach an agreement and so reports or fails to certify a salary report to the clerk of the county commission by December fifteenth of any year in which a report is required to be certified by this section, then the compensation being paid to each affected office or officer on such date shall continue to be the compensation paid to the affected office or officer during the succeeding term of office.

*Id.* The trial court concluded that "[t]he failure of the Commission to take and report its actions in conformity with the requirements of 50.333.7 and .8 constitutes a failure to report as required by subsection 50.333.9. Pursuant to that subsection, the Collector's salary remains at the level paid during the 2003–2007 term, $65,525 per year."

The certification issued on December 15th complied with § 50.333.7, § 50.333.8 and § 50.333.9. We have already addressed above why the certification complied with

§ 50.333.7 and § 50.333.8. Section 50.333.9 uses the phrase "by December fifteenth." The term "by" is defined to mean "not later than." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 170 (11th ed.2005). Therefore, § 50.333.9 required the Salary Commission to certify a salary report not later than December 15th, or "the compensation being paid to each affected office or officer on such date shall continue to be the compensation paid to the affected office or officer during the succeeding term of office." *Id.* Because the certification was issued on December 15th, which is not later than December 15th, and because the report and certification complies with § 50.333.7 and § 50.333.8, the trial court erred in determining that the compensation should continue "at the level paid during the 2003–2007 term, $65,525 per year."

### III. Conclusion

The trial court's decision to grant summary judgment to Wyatt was erroneous because she was not entitled to judgment as a matter of law on these undisputed facts. *See* Rule 74.04(c)(6). Accordingly, the judgment in Wyatt's favor is reversed, and the cause is remanded for further proceedings consistent with this opinion.[5]

BARNEY and BURRELL, JJ., concur.

---

5. Because the County's counterclaim was dismissed as moot, the trial court made no decision on the merits of that claim. We likewise express no opinion on the matter and leave that claim to be determined by the trial court on remand.